[Cite as *In re B.B.*, 2015-Ohio-3790.]

## IN THE COURT OF APPEALS OF OHIO
### SECOND APPELLATE DISTRICT
### GREENE COUNTY

IN THE MATTER OF:  B.B. AND S.H.

    C.A. CASE NO. 2015-CA-1

    T.C. NO. S44543, S44544

    (Civil appeal from Common Pleas
    Court, Juvenile Division)

. . . . . . . . . .

# O P I N I O N

Rendered on the ___18th___ day of ____September____, 2015.

. . . . . . . . . .

BRITTANY M. HENSLEY, Atty, Reg. No. 0086269, Assistant Prosecutor, 61 Greene Street, Xenia, Ohio 45385
    Attorney for Plaintiff-Appellee Greene County Children Services Board

J. ANDREW ROOT, Atty. Reg. No. 0059287, 133 E. Market Street, Xenia, Ohio 45385
    Attorney for Defendant-Appellant

A.B., Cincinnati, Ohio
    Defendant-Appellant

ALAN COLLINS, Atty. Reg. No. 0062915, 2002 N. Fountain Street, Springfield, Ohio 45504
    Attorney for Appellee Minor Child B.B.

LAURA GRISSETT, Greene County CASA, 2100 Greene Way Blvd., Xenia, Ohio 45385
    Guardian Ad Litem

. . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Defendant-appellant A.B. appeals a decision of the Greene County Court of Common Pleas, Juvenile Division, terminating her parental rights with respect to her minor daughters, B.B. and S.H., and awarding permanent custody of both girls to Greene County Children's Services (hereinafter "GCCS"). A.B. filed a timely pro se notice of appeal with this Court on December 31, 2014.

I

{¶ 2} A.B. gave birth to B.B. in 2006. J.S.B. is the biological father of B.B. In 2011, A.B. gave birth to S.H., whose father is P.H., Sr.[1]

{¶ 3} On December 7, 2012, GCCS was granted an ex parte award of emergency custody of B.B. and S.H. GCCS filed a complaint on the same day in which it alleged that B.B. and S.H. were dependent because A.B. was addicted to illegal drugs and would leave the children with various people who were unable and/or unwilling to provide care for them. After a shelter care hearing held on December 10, 2012, the trial court awarded interim custody of B.B. and S.H. to GCCS. Shortly thereafter on January 25, 2013, the minor girls were adjudicated dependent, and GCCS was awarded temporary custody of the children.

{¶ 4} In the early pendency of the case, GCCS developed a plan for A.B. whereby she could address the issues leading to the removal of B.B. and S.H. from her care. Specifically, GCCS directed A.B. to do the following: 1) a drug and alcohol assessment and adhere to any and recommendations made as a result of the assessment; 2) a mental health assessment and follow any recommendations made as a result of the assessment;

---

[1] At the time the trial court granted GCCS permanent custody of the minor girls, B.B. was approximately eight years old, and S.H. was almost four years old.

3) submit to random drug screens; and 4) obtain and maintain safe and stable housing.

{¶ 5} On December 3, 2013, GCCS filed a motion requesting modification of the temporary custody order, seeking a permanent custody order. Before ruling on its request for modification of the custody order, the trial court granted GCCS the first extension of temporary custody of B.B. and S.H. on December 24, 2013.

{¶ 6} A review hearing was thereafter held on August 19, 2014, after which the trial court denied GCCS's motion for permanent custody of B.B. and S.H in a decision issued on August 26, 2014. In the same decision, the trial court granted GCCS its second extension of temporary custody of B.B. and S.H.

{¶ 7} At the review hearing, evidence was adduced that A.B. had engaged in drug and alcohol treatment and mental health treatment. A.B., however, received the aforementioned treatment through the Greene Leaf Program while she was incarcerated on a probation violation stemming from an earlier burglary conviction. Upon her release from Greene Leaf, A.B. was again placed on probation and ordered to engage in aftercare treatment. Within a few weeks, however, A.B. "relapsed" and tested positive for heroin and Percocet.

{¶ 8} Shortly thereafter, A.B. requested permission from her probation officer to travel to Kentucky in order to purportedly pay misdemeanor court fines. After traveling to Kentucky, A.B. absconded and began using illegal drugs again. During her absence, A.B. failed to maintain contact with her probation officer or her caseworker at GCCS. A.B. was subsequently arrested after returning to Montgomery County, Ohio on a possession of heroin charge. Moreover, A.B.'s probation was revoked, and she was sentenced to a twenty-four month prison term.

{¶ 9} On November 5, 2014, GCCS filed a motion for modification of temporary custody to permanent custody. The permanent custody hearing was subsequently held on December 2, 2014, during which the trial court heard testimony from several witnesses, including GCCS employees with direct knowledge of B.B and S.H.'s situation, A.B., S.O. (A.B.'s grandmother), and M.P. (the minor girls' foster mother). At the time of the permanent custody hearing, A.B. was still in prison, and B.B. and S.H. had been in the temporary custody of GCCS for approximately two years. On December 9, 2014, the trial court issued a decision terminating A.B.'s parental rights and granting permanent custody of B.B. and S.H. to GCCS.

{¶ 10} It is from this judgment which A.B. now appeals.

II

{¶ 11} Initially, we note that appellant's appointed counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), in which he asserted that he could locate no arguable issues for review on appeal. Pursuant to *Anders*, we granted A.B. sixty days from our order filed on April 13, 2015, in which to file a pro se brief for our review. On June 5, 2015, A.B. filed a timely pro se brief asserting four assignments of error for our review. Before we address A.B.'s assignments of error, however, we must set forth the correct legal standard utilized in cases where a defendant's parental rights are terminated by the trial court.

{¶ 12} As this Court has previously noted:

The United States Supreme Court has recognized that parents' interest in the care, custody, and control of their children "is perhaps the oldest of the fundamental liberty interests recognized" by the court. *Troxel v.*

*Granville* (2000), 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49. Parents who are suitable persons have a "paramount" right to the custody of their minor children. *In re Perales* (1977), 52 Ohio St.2d 89, 97, 6 O.O.3d 293, 369 N.E.2d 1047.

In a proceeding for the termination of parental rights, all the court's findings must be supported by clear and convincing evidence. R.C. 2151.414(E); *In re J.R.*, Montgomery App. No. 21749, 2007-Ohio-186, at ¶ 9. However, the court's decision to terminate parental rights will not be overturned as against the manifest weight of the evidence if the record contains competent, credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been established*. In re Forrest S.* (1995), 102 Ohio App.3d 338, 344–345, 657 N.E.2d 307. We review the trial court's judgment for an abuse of discretion. *See In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, at ¶ 48 (applying abuse-of-discretion standard to trial court's findings under R.C. 2151.414).

*In re K.W.*, 185 Ohio App. 3d 629, 2010-Ohio-29, 925 N.E.2d 181, ¶ 14-15 (2d Dist.).

**{¶ 13}** We have also held the following:

"Abuse of discretion" has been defined as an attitude that is unreasonable, arbitrary, or unconscionable. *Huffman v. Hair Surgeons, Inc.*, 19 Ohio St.3d 83, 482 N.E.2d 1248 (1985). A decision is unreasonable if there is no sound reasoning process that would support that decision. *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment*

*Corp.*, 50 Ohio St.3d 157, 553 N.E.2d 597 (1990). *Feldmiller v. Feldmiller*, 2d Dist. Montgomery No. 24989, 2012-Ohio-4621, ¶ 7.

{¶ 14} R.C. 2151.414 establishes a two-part test for courts to apply when determining a motion for permanent custody to a public services agency. The statute requires the court to find, by clear and convincing evidence, that: (1) granting permanent custody of the child to the agency is in the best interest of the child; and (2) either the child (a) cannot be placed with either parent within a reasonable period of time or should not be placed with either parent if any one of the factors in R.C. 2151.414(E) are present; (b) is abandoned; (c) is orphaned and no relatives are able to take permanent custody of the child; or (d) has been in the temporary custody of one or more public or private children services agencies for twelve or more months of a consecutive twenty-two month period. *In re L.W.,* 2d Dist. Montgomery No. 26243, 2014–Ohio–4507, ¶ 11, citing R.C. 2151.414(B)(1).

{¶ 15} R.C. 2151.414(D)(1) directs the trial court to consider all relevant factors when determining the best interest of the child, including but not limited to: (a) the interaction and interrelationship of the child with the child's parents, relatives, foster parents and any other person who may significantly affect the child; (b) the wishes of the child; (c) the custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period; (d) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (e) whether any of the factors in R.C. 2151.414(E)(7) through (11) are applicable.

{¶ 16} A.B. does not dispute that at the time of the permanent custody hearing in December of 2014 that B.B. and S.H. had been in the custody of the GCCS for almost two years, well in excess of twelve or more months of a consecutive twenty-two month period. Moreover, at the time of the hearing, A.B. was still incarcerated, and S.O., A.B.'s grandmother, had not refiled her request for legal custody of the girls. Although A.B. attended many programs while she was incarcerated in an attempt to improve her chances of reunification with the girls, she failed to follow her case plan on numerous occasions by continuing to use illegal drugs and leaving B.B. and S.H. with various people who were unable and/or unwilling to provide care for them.

{¶ 17} Additionally, if S.O. had filed a request for custody of the girls (which she did not), ample evidence was adduced that her home was an unsuitable placement for the girls. Specifically, S.O.'s husband, who also lived at the residence, is an alcoholic who was observed by law enforcement officers to be heavily intoxicated on at least one occasion when they were called to the residence. Additional evidence was presented which established that A.C., A.B.'s minor brother, also lived at the S.O. residence and had continuous negative involvement with law enforcement.

{¶ 18} Upon review, we also find clear and convincing evidence to support the trial court's determination, based on all of the evidence, that an award of permanent custody to GCCS was in B.B.'s and S.H.'s best interest. Since being placed in the temporary custody of GCCS, the girls have been in a stable environment where they have thrived, both mentally and physically. Furthermore, B.B. and S.H. have been placed together. B.B. affirmatively stated that she wanted to stay with her foster family. The trial court found that S.H., at the age of four, was unable to clearly state her wishes regarding

placement. The foster parents have a son who has bonded with both B.B. and S.H. The foster parents have expressed their desire to adopt the girls. This likely prospect for adoption is directly related to the best-interest analysis under R.C. 2151.414. *In re A.U.,* 2d Dist. Montgomery No. 22264, 2008–Ohio–186, ¶ 34. We note too that the girls' guardian ad litem recommended an award of permanent custody to GCCS. Moreover, despite A.B.'s love for B.B. and S.H., the record reflects that the child's history of placement with A.B. and S.O. has been unstable.

{¶ 19} In addition to the findings it made pursuant to R.C. 2151.414(D)(1), the trial court also made the requisite findings under R.C. 2151.414(D)(2) to support permanent custodial placement of B.B. and S.H. with GCCS. Division (D)(2) provides that if: (a) the trial court has determined, by clear and convincing evidence, that the child cannot be placed with either parent within a reasonable time, or should not be placed with either parent; *and* (b) the child has been in the agency's custody for two years or longer and no longer qualifies for temporary custody; *and* (c) the child does not meet the requirements for a planned permanent living arrangement; *and* (d) no one has come forward to seek legal custody of the child, then, in that case, where there is no practical alternative to a permanent placement by the agency, the General Assembly has made a legislative determination that it is not in the best interest of the child to remain in legal limbo—the agency should be allowed to move forward with a permanent placement for that child. *In re K.H.,* 2d Dist. Clark No. 2009-CA-80, 2010-Ohio-1609, ¶56, citing R.C. 2151.414(D)(2)(a)-(d).

{¶ 20} In the instant case, the trial court found that the girls could not be placed with A.B. within a reasonable time because of her repeated incarcerations and her failure

to remedy the issues which originally led to the removal of B.B. and S.H.   Moreover, A.B. had not completed the requisite community-based programs in her case plan, nor was she in a position to return to her parental obligations to the girls since she was going to remain in a half-way house upon her release from prison. The record also established neither of the girls' fathers were willing to take custody of them.

{¶ 21} As has already been discussed, at the time of the permanent custody hearing, B.B. and S.H. had been in the GCCS custody for two years or longer and no longer qualified for temporary custody.

{¶ 22} The third factor in R.C. 2151.414(D)(2) required the trial court to consider whether either child was eligible to participate in a planned permanent living arrangement (PPLA).   R.C. 2151.353(A) states that if a child is adjudicated an abused, neglected, or dependent child, the court may make one of several orders of disposition. R.C. 2151.353(A)(5) states that a court may:

Place the child in a planned permanent living arrangement with a public children services agency or private child placing agency, if a public children services agency or private child placing agency requests the court to place the child in a planned permanent living arrangement and if the court finds, by clear and convincing evidence, that a planned permanent living arrangement is in the best interest of the child and that one of the following exists:

(a) The child, because of physical, mental, or psychological problems or needs, is unable to function in a family-like setting and must remain in residential or institutional care.

(b) The parents of the child have significant physical, mental, or psychological problems and are unable to care for the child because of those problems, adoption is not in the best interest of the child, as determined in accordance with division (D) of section 2151.414 of the Revised Code, and the child retains a significant and positive relationship with a parent or relative.

(c) The child is sixteen years of age or older, has been counseled on the permanent placement options available to the child, is unwilling to accept or unable to adapt to a permanent placement, and is in an agency program preparing the child for independent living.

{¶ 23} Here, none of the requirements set forth in R.C. 2151.353(A)(5) were met by either B.B. or S.H. Both children were under the age of sixteen. Moreover, evidence was adduced which established that both children were able to function in a family-like setting and had significantly bonded with their foster parents. Neither B.B. nor S.H. was shown to have a significant relationship with their biological parent. Both girls were abandoned by their respective fathers, and A.B. had been incarcerated or merely absent for a significant portion of the girls' lives. Thus, the girls were not eligible for a PPLA.

{¶ 24} The fourth and final factor of R.C. 2151.414(D)(2) pertains to whether anyone had come forward to petition for legal custody of the children at the time of the permanent custody hearing. It is undisputed that no one, including S.O., had come forward and petitioned for legal custody of B.B. and S.H. at the time of the permanent custody hearing on December 2, 2014.

{¶ 25} A.B.'s first assignment of error is as follows:

{¶ 26} "DOES COUNSEL OF RECORD, HEATHER SHANNON'S PERFORMANCE FALL BELOW THE OBJECTIVE STANDARD OF REASONABLE PRESENTATION, WHERE COUNSEL FAILED TO OBJECT TO THE TRIAL COURT AND CHILDREN SERVICES NOT RECOGNIZING THE PROGRAMS, COUNSELING, CLASSES, AND SEMINARS THAT APELLANT ATTENDED AND GRADUATED FROM BEING LEGALLY SUFFICIENT FOR PURPOSES AND CAUSE OF REUNIFICATION OF THE MINOR CHILDREN WITH THE APPELLANT, AS WELL AS COUNSEL FAILING TO GIVE A CLOSING ARGUMENT OF WHICH COULD HAVE ADDRESSED SAID SAME ISSUES?"

{¶ 27} In her first assignment, A.B. contends that her counsel at the hearings on August 19, 2014, and December 2, 2014, was ineffective for failing to object to the testimony of Nicole Larson, a supervisor at GCCS, regarding the programs she completed while incarcerated. A.B. argues that Larson's testimony discredited her involvement in and completion of the prison programs, and was therefore, very prejudicial to her case. A.B. asserts that her counsel should have objected and requested an evidentiary hearing in order to establish the validity of the prison programs.

{¶ 28} We review alleged instances of ineffective assistance of trial counsel under the two prong analysis set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted by the Supreme Court of Ohio in *State v. Bradley,* 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). Pursuant to those cases, trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. *Strickland*, at 688. To reverse a conviction based on ineffective assistance of counsel, it must be demonstrated that trial counsel's conduct fell

below an objective standard of reasonableness and that his or her errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different. *Id.*

**{¶ 29}** An appellant is not deprived of effective assistance of counsel when counsel chooses, for strategic reasons, not to pursue every possible trial tactic. *State v. Brown,* 38 Ohio St.3d 305, 319, 528 N.E.2d 523 (1988). The test for a claim of ineffective assistance of counsel is not whether counsel pursued every possible defense; the test is whether the defense chosen was objectively reasonable. *Strickland,* at 689. A reviewing court may not second-guess decisions of counsel which can be considered matters of trial strategy. *State v. Smith,* 17 Ohio St.3d 98, 477 N.E.2d 1128 (1985). Debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel, even if, in hindsight, it looks as if a better strategy had been available. *State v. Cook,* 65 Ohio St.3d 516, 524, 605 N.E.2d 70 (1992).

**{¶ 30}** In the instant case, counsel for A.B. had no legitimate grounds upon which to object to Larson's testimony regarding the programs A.B. completed while she was in prison. Larson's testimony was not discrediting the prison programs. Rather, Larson merely testified that given A.B.'s extensive history of drug abuse and inability to maintain her sobriety while not incarcerated, she would need to continue to engage in services and classes when she was released from prison in order to stay sober. Accordingly, A.B. has failed to establish that her counsel's failure to object to Larson's testimony was deficient.

**{¶ 31}** We also find that A.B.'s counsel's failure to give a closing statement did not amount to ineffective assistance. In *State v. Burke*, 73 Ohio St.3d 399, 653 N.E.2d 242 (1995), the Ohio Supreme Court recognized that the waiver of closing argument to the

jury does not ipso facto constitute ineffective assistance of counsel, and that the waiver might simply constitute a matter of trial strategy. *Id.* at 404-405, 653 N.E.2d 242. *See also State v. Apanovitch,* 33 Ohio St.3d 19, 24, 514 N.E.2d 394 (1987) (waiver of closing for what appeared to be tactical reasons). We note that in the instant case, there was no jury at the permanent custody. The matter was heard by a single judge who had the opportunity to hear all of the testimony and observe all of the witnesses and evidence adduced at the hearing.

{¶ 32} Having reviewed the matter, we are unable to conclude that the performance of defendant's trial counsel fell below an objective standard of reasonable representation, or that defendant was materially prejudiced by counsel's alleged substandard performance. Under the circumstances, we do not believe that counsel's decision to forego closing argument to the trial court was either clearly unreasonable, or that a reasonable probability exists that the result of the permanent custody hearing would have been different but for counsel's failure to make a closing argument.

{¶ 33} A.B.'s first assignment of error lacks arguable merit.

{¶ 34} A.B.'s second assignment of error is as follows:

{¶ 35} "DOES THE TRIAL COURT ABUSE ITS DISCRETION BY DISCREDITING THE PROGRAMS, COUNSELING, CLASSES AND SEMINARS COMPLETED BY APPELLANT WHILE INCARCERATED IN STATE PRISON?"

{¶ 36} In her second assignment, A.B. argues that the trial court abused its discretion "by not accepting the programs, classes and seminars completed by appellant in prison as legitimate accredited programs."

{¶ 37} In its decision granting permanent custody of B.B. and S.H. to GCCS, the

trial court made specific note of the classes taken by A.B. while incarcerated and stated in pertinent part:

> While in prison, [A.B.] completed a variety of classes, programs and seminars regarding mental health issues, domestic violence, parenting and substance abuse. She also completed an apprentice program to acquire janitorial skills. Although her prison sentence terminates in March, 2015, she has been approved for release to a half-way house on December 28, 2014. *Although the classes and programs* [A.B.] *has completed while in prison is an indication that she has been taking steps to improve her chances of succeeding when she is released to the community, the prison classes, some of which are online and may be completed within a matter of hours, lack the rigor of the community programs, typically arranged by the agency. In light of* [A.B.]'s *history of substance abuse and pattern of relapsing when released from incarceration,* [A.B.] *would need to successfully complete community-based counseling programs and be randomly drug-screened before it could be determined if she has adequately addressed mental health and substance abuse issues.* In addition, she would need to secure employment and housing to be in a position to adequately parent the children. In light of [A.B.]'s repeated inability to be in a position to adequately parent the children, the Court finds that the children cannot be placed with [A.B.] within a reasonable period of time. Despite reasonable case planning and diligent efforts by the agency to assist [A.B.] to remedy the problems that initially caused the children to

be placed outside the home, [A.B.] has failed continuously and repeatedly to substantially remedy those conditions.

{¶ 38} As is apparent from the above language, the trial court did not discredit the prison programs that A.B. attended and completed. The trial court merely stated that based on her history of drug abuse and "inability to be in a position to adequately parent the children[,]" she would need to attend community based programs once she was released from prison to address her problems. It is clear that the trial court gave A.B. credit for completion of the prison programs. The trial court, however, was more concerned with A.B.'s actions and behavior once she was released from prison, and given her prior history of drug abuse and incarceration, the trial court was well within its discretion in finding her unsuitable as a parent and awarding permanent custody of B.B. and S.H. to GCCS.

{¶ 39} A.B.'s second assignment of error lacks arguable merit.

{¶ 40} A.B.'s third assignment of error is as follows:

{¶ 41} "DOES THE TRIAL COURT COMMIT PLAIN ERROR WHERE THE FATHERS OF BOTH B.B. AND S.H. WERE NEVER PROPERLY CONTACTED BY LAW AS TO THE PERMANENT CUSTODY ACTION IN THE COURT?"

{¶ 42} In her third assignment, A.B. argues that the trial court erred in granting permanent custody to GCCS, alleging that service of notice of the permanent custody hearing on December 2, 2014, was not properly obtained on either of the two named fathers, P.H., Sr. and J.S.B. A.B.'s argument is essentially that if the fathers had been properly served, she would have been able to retain her parental rights in regards to B.B. and S.H.

{¶ 43} Initially, we note that the record establishes that on November 10, 2014, both fathers were served by posting of notices of the permanent custody hearing. The notices were posted in the Greene County Juvenile Court Lobby, the Greene County Courthouse Lobby, and the Xenia City Building Lobby. Additionally, in an affidavit filed on November 5, 2014, from Beth Pfoutz, A.B.'s caseworker at GCCS, she states that she has tried, unsuccessfully, to locate both P.H., Sr. and J.S.B. Pfoutz's affidavit was attached to GCCS's motion for permanent custody of B.B. and S.H. filed on November 5, 2014.

{¶ 44} A.B. does not argue on appeal that notice by posting was not the proper method of service, nor does she claim that there were any deficiencies in the notice that was posted. Significantly, A.B. failed to object to the posted notices to the fathers at the trial level. Accordingly, there is no merit to A.B.'s claim that the fathers were not properly served notice of the hearing.

{¶ 45} It is a fundamental rule of law that a court must have personal jurisdiction over a party in order to enter a valid judgment. *Maryhew v. Yova*, 11 Ohio St.3d 154, 156, 464 N.E.2d 538 (1984). The general rule in Ohio is as follows:

> [B]efore a personal judgment can be entered against a person, process must have been served upon him, *or* he must have entered an appearance in the action, *or* he must have affirmatively waived service. Absent any of these circumstances, the trial court lacks jurisdiction to enter a judgment, and if a judgment is nevertheless rendered, it is a nullity and void *ab initio.*

*O.B. Corp. v. Cordell*, 47 Ohio App.3d 170, 171, 547 N.E.2d 1201 (10th Dist.1988); *see also In re Crow*, 2d Dist. Darke No. CA 1521, CA 1522, 2001 WL 62895, *2 (Jan. 22,

2001). R.C. 2151.414(A) states that upon a filing of a motion for permanent custody, notice of the filing of the motion and of the hearing shall be given to all parties in the action. Such notice should include a full explanation of the parties' rights and the potential outcome of the proceeding. *Id.*

{¶ 46} However, "a mere assertion that a purported father was not properly served is an insufficient basis upon which to award standing to the appellant-mother to raise such error." *In re A.M.*, 9th Dist. Summit No. 26141, 2012-Ohio-1024, ¶ 18, citing *In re L.A.,* 9th Dist. Summit No. 21531, 2003–Ohio–4790, ¶ 56. "It is necessary, instead, for the appealing party to demonstrate that she was 'actually prejudiced' by the alleged error before she may assert it on her own behalf; otherwise she lacks standing to raise the issue. *In re Jordan,* 9th Dist. Summit Nos. 20773, 20786, 2002 WL 121211, *7 (Jan. 30, 2002)." *Id.* at ¶ 18. Therefore, in order to establish standing, A.B. was required to demonstrate that the alleged failure to perfect timely service upon the fathers resulted in actual prejudice to her.

{¶ 47} A.B. has not established that she was prejudiced in any way. Specifically, the record established that both fathers had abandoned their respective child. Neither father had a relationship with their respective child, and no evidence was adduced that either men were in a position to provide adequate care for the children. GCCS caseworker Ann Masters testified that she personally spoke with P.H., Sr., the father of S.H., and he was unable to take care of his daughter. Masters testified that she attempted to contact J.S.B., but he did not return any of her calls. Simply put, the record is devoid of any evidence which would support a finding that it would be in the best interest of B.B. and/or S.H. to be in the custody of their respective fathers. Because she

is unable to establish that she suffered any prejudice as a result of the alleged failure of service on P.H., Sr. and J.S.B., she is without standing to claim error on their behalf.

{¶ 48} A.B.'s third assignment of error lacks arguable merit.

{¶ 49} A.B.'s fourth and final assignment of error is as follows:

{¶ 50} "DOES APPELLATE COUNSEL FALL BELOW THE OBJECTIVE STANDARD OF REASONABLE REPRESENTATION?"

{¶ 51} In her final assignment, A.B. contends that her appointed appellate counsel provided ineffective assistance when he filed an *Anders* brief in which he asserted that he was unable to find any errors having potentially arguable merit.

{¶ 52} A.B. has not directed our attention to any authority which supports the proposition that the filing of an *Anders* brief *per se* constitutes ineffective assistance of counsel. *State v. Furlow*, 2d Dist. Montgomery No. 18879, 2002 WL 313168, *4 (March 1, 2002). Moreover, having determined that A.B.'s previous assignments have no arguable merit, we cannot find that her appellate counsel performed deficiently by failing to raise those issues on appeal. *Id.*

{¶ 53} A.B.'s fourth assignment of error lacks arguable merit, and is therefore wholly frivolous.

{¶ 54} In addition to examining the claims raised by A.B. pro se, we have conducted an independent review of the record of the trial court's proceedings. We see no error having arguable merit.

{¶ 55} The judgment of the trial court is affirmed.

. . . . . . . . . .

FAIN, J. and HALL, J., concur.

Copies mailed to:

Brittany M. Hensley
J. Andrew Root
A.B.
Alan Collins
Laura Grissett
Hon. Robert W. Hutcheson