[Cite as *In re A.M.*, 2012-Ohio-1024.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: A.M.
  T.M.
  J.W.
  J.B.

C.A. No.  26141

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos. DN08-06-0466
     DN08-06-0467
     DN08-06-0468
     DN08-06-0469

DECISION AND JOURNAL ENTRY

Dated: March 14, 2012

CARR, Judge.

{¶1} Appellant, Jaia B, ("Mother") has appealed from the judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated parental rights to her four children, A.M., T.M., J.W., J.B., and placed them in the permanent custody of Summit County Children Services Board ("CSB"). This Court affirms.

I.

{¶2} Mother has four children: A.M., born June 14, 2002; T.M., born August 23, 2003; J.W., born November 30, 2005; and J.B., born July 24, 2007. Mother named Travonne M. as the alleged father of A.M. and T.M., and Jason W., as the alleged father of J.W. and J.B. Neither man appeared at the permanent custody hearing, nor is either man a party to this appeal.

{¶3} This case has a lengthy and unusual history, with the children being moved in and out of Mother's care several times. CSB initially became involved with Mother and her children

in May 2008, when the oldest child was found to have bruising on her arms, lower back, and buttocks. After an investigation, Mother began working with the agency on a voluntary basis. Other problems surfaced, including a lack of supervision of the children, failure to get the children to medical appointments and school on a regular basis, and a pending eviction. On June 12, 2008, the agency filed a complaint in juvenile court, alleging that all four children were abused, neglected and dependent. The children were placed in emergency temporary custody, and the case proceeded through adjudication and disposition. In August 2008, the two youngest children were placed in the temporary custody of CSB and the two oldest children were permitted to return to the custody of Mother with protective supervision. This plan was designed to allow the school-aged children to start school in their home district and with the expectation that this would be part of a gradual transition towards allowing Mother to have all four children back in her home.

{¶4} The plan did not last long. Four months later, CSB sought and obtained the emergency custody of the two children that were in Mother's care on the grounds that Mother's boyfriend, David Anderson, posed a risk to the family's safety and stability. On April 21, 2009, the agency moved for permanent custody.

{¶5} In June 2009, and before the motion was heard, the agency agreed to a new arrangement whereby Mother would move in with the foster mother, Lynnise Wells. Through this arrangement, Mother would have a place to live, the guidance of the foster mother in caring for the children, and a job at the daycare center operated by Ms. Wells. CSB anticipated withdrawing its motion of permanent custody if Mother demonstrated stability and earnest case plan compliance.

{¶6} The arrangement lasted less than a month, however. By the end of June 2009, Mother was no longer living with Ms. Wells and CSB returned to the idea of pursuing permanent custody at the hearing previously set for August 18, 2009. The agency rushed a request for service by publication on Mother, Travonne M., Jason W., and John Doe, and publication was accomplished on August 11, 2009. Mother attended the hearing, but no one claiming to be a father to any of the children appeared or participated in any way. The trial court granted CSB's motion for permanent custody, and Mother filed a notice of appeal.

{¶7} On November 12, 2009, CSB reportedly received a telephone call from Travonne M., in which he claimed he was never notified the children were at risk of being placed in permanent custody. The agency conceded that certified mail had not been sent to the last known addresses of the two alleged fathers before the notice was published, as required by R.C. 2151.29. Travonne M. reportedly claimed that he was, in fact, living at the listed address on the date the affidavit was filed, although he moved from that address subsequently. Also, CSB learned that Jason W. had been released from Ironwood prison, his last known address, prior to a mailing sent to him there. Thereupon, CSB moved to vacate the judgment. Appellate proceedings were stayed, and the case was remanded to the trial court for a determination of whether the judgment would be vacated. On February 8, 2010, the trial court vacated the judgment granting permanent custody, and the appeal was subsequently dismissed as moot.

{¶8} In that interim period, the caseworker observed that Mother had "made major changes in her life" and "really stepped up to the plate." CSB determined that it would be in the best interest of the children to give Mother another opportunity to reunify with her children and requested a six-month extension of temporary custody. The trial court granted the motion and the original case planning goals were revived. The reunification objectives included suitable

housing, counseling, employment, and a requirement that Mother keep all medical appointments for the children. Mother made good progress. By August 2010, the guardian ad litem proposed that Mother should be given legal custody of the children. In so doing, she noted that Mother had obtained housing and a job, was participating in Alcoholics Anonymous, had a strong bond with her children, and was receiving great support from the foster mother. In addition, the caseworker stated that she was "thoroughly impressed with the improvements and changes that mom appeared to have made * * *." The trial court granted the motion and awarded legal custody to Mother with protective supervision by the agency.

{¶9} Four months later, though, CSB was forced once again to seek emergency custody of the children, based on allegations of abuse of one of the children by another of Mother's boyfriends, Antoine Williams. Following its investigation, CSB reported that all four children claimed to have been abused by Mr. Williams, and also that Mother was aware of the abuse. The caseworker said she was very concerned because "it was kind of history repeating itself again." She expressed her belief that Mother loves the children, but has shown that she cannot protect them.

{¶10} Following hearings, the children were returned to the temporary custody of the agency. On January 31, 2011, CSB moved for permanent custody for the third time, and a hearing was set for June 15, 2011. Before the hearing could take place, the guardian ad litem requested a delay until a possible relative placement could be investigated. The placement did not prove successful. As a result of the delay, however, the permanent custody hearing was continued to August 17, 2011. During the few months leading up to the hearing, the caseworker had received telephone calls from both Travonne M. and Jason W., but neither man made any effort to become involved, establish paternity, or meet with the children.

{¶11} Five days before the date set for the permanent custody hearing, CSB filed a written motion, claiming that it had served Mother and the two named alleged fathers, but had not yet obtained publication service on John Doe. The agency asked the trial court to "bifurcate" service for John Doe, thus separating that requirement from service upon the two named alleged fathers. CSB requested that publication service on John Doe be allowed to take place while the permanent custody hearing proceeded, and that the trial court defer in making its decision until the publication became final. The motion was argued at the beginning of the permanent custody hearing. Over the objection of Mother, the trial court granted the motion. The permanent custody hearing began on August 17, 2011. Mother attended the hearing, but neither of the alleged fathers was present. The hearing was recessed until September 15, 2011, with the expectation that if a professed father appeared, the hearing would be reopened and he would be permitted to call or recall witnesses. Publication was accomplished on August 25, 2011, with an indicated hearing date of September 15, 2011. No alleged father appeared on that day. On September 26, 2011, the trial court entered judgment granting permanent custody to CSB. Mother has appealed and has assigned a single error for review.

II.

**ASSIGNMENT OF ERROR**

THE JUVENILE COURT ERRED BY GRANTING SUMMIT COUNTY CHILDREN SERVICE BOARD['S] MOTION FOR PERMANENT CUSTODY OF A.M., T.M., J.W., AND J.B. WHERE THE RECORD DOES NOT SUPPORT A FINDING THAT SERVICE HAD BEEN PROPERLY COMPLETED ON THE ALLEGED FATHERS AND THE "JOHN DOE" FATHERS.

{¶12} In her sole assignment of error, Mother contends that the trial court erred in granting permanent custody of the children to CSB because service of notice of the permanent custody hearing was not properly obtained on either of the two named alleged fathers or John

Doe. Mother does not dispute that the trial court properly acquired personal jurisdiction over her, but maintains that the trial court lacked personal jurisdiction over the purported fathers of the children due to alleged defects in service. Mother claims she has standing to assert this error with respect to non-appealing individuals because she has been prejudiced by the possible loss of "residual parental rights." In other words, she claims that if an unserved father had appeared, she might have been able to retain her residual parental rights.

{¶13} When a motion for permanent custody is filed, R.C. 2151.414 requires the court to schedule a hearing and to notify all parties "of the filing of the motion and of the hearing, in accordance with section 2151.29 of the Revised Code." R.C. 2151.414(A). *See also In re S.S.*, 9th Dist. No. 10CA0010, 2010-Ohio-6374, ¶ 10. The notice requirement of R.C. 2151.414(A) ensures that the juvenile court has personal jurisdiction over the parents. *In re Kincaid*, 4th Dist. No. 00CA3, 2000 WL 1683456, *4 (Oct 27, 2000). Unlike subject matter jurisdiction, the issue of personal jurisdiction is forfeited without timely objection. *In re J.P.*, 9th Dist. No. 23937, 2008-Ohio-2157, ¶ 7. Whether the alleged fathers were properly served, therefore, raises an issue of personal, rather than subject matter jurisdiction. *See In re M.M.*, 8th Dist. No. 79947, 2002 WL 207610, *5 (Feb. 7, 2002). Ordinarily such an issue would be personal to them, and Mother may not raise it. *See id.* In general, an appealing party may complain of an error committed against a non-appealing party when the error is prejudicial to the rights of the appealing party. *State v. Ward*, 9th Dist. No. 13462, 1988 WL 99182, *3 (Sept. 21, 1988). More particularly, an appellant-mother may challenge an alleged service error regarding a non-appealing party only when she has demonstrated that she herself has been prejudiced by the alleged error. *In re Rackley*, 9th Dist. No. 18614, 1998 WL 162845, *2 (Apr. 8, 1998), citing *Ward*, *supra*, and *In re Matis,* 9th Dist. No. 16961, 1995 WL 314683 (May 24, 1995).

**{¶14}** This Court will separately address the issue of service regarding Travonne M., Jason W., and John Doe. First, in regard to Travonne M., the record reflects that he was properly served by certified mail, followed by regular mail when the certified mailing was returned unclaimed. See Juv.R. 16(A) and Civ.R. 4.6(D) (providing for completion of service by ordinary mail where the certified mail attempt is returned unclaimed.) Notice was sent to Travonne M. by certified mail at two different addresses in Lancaster, California: 43444 Gadsden, Unit 125, and 43522 Gadsden, Unit 286. The return from the first address indicated that forwarding time had expired, while the return from the second indicated that it was unclaimed. Another notice was then sent by regular mail to the address from which the certified mailing was returned unclaimed. The regular mailing was not returned.

**{¶15}** On appeal, Mother does not specifically assert error in these mailings. Rather, she claims error in that Travonne M. was not served by the same process in regard to the continuance of the permanent custody hearing to August 17, 2011. Mother has not supported her position with any legal authority. Ohio courts have held that "R.C. 2151.414 requires only notice of the original hearing following the filing of a motion for permanent custody. * * * After notice is served concerning the permanent custody motion and initial hearing, nothing further is required for the juvenile court to acquire jurisdiction* * *." *In re K.P.,* 6th Dist. No. L-03-1266, 2004-Ohio-1976, ¶ 7. *See also In re Xavier D.-S.,* 6th Dist. No. L-99-1342, 2000 WL 1161912, *2 (Aug. 14, 2000). Furthermore, the record appears to indicate that notice of the continued date was mailed to Travonne M. at the above address, and that the date was journalized and entered into the appearance docket. Mother's argument in regard to service upon Travonne M. is overruled.

{¶16} Next, regarding Jason W., CSB argues that Mother's claim is forfeited due to her failure to timely enter a specific objection at the permanent custody hearing regarding any defects in service upon him. It is generally true that "[p]ersonal jurisdiction is waived if not raised through the first pleading, motion, or appearance in the trial court." *In re J.P.*, 9th Dist. No. 23937, 2008-Ohio-2157, ¶ 7. A reviewing court has discretion to ignore a waiver in appropriate cases, however. *In re M.M.*, 2002 WL 207610, *4. It does appear that Mother did not enter a specific objection to service upon Jason W. during the argument on this issue in open court, however, that portion of the record also reflects that CSB's attorney affirmatively stated that Jason W. had "claimed certified mail on February 22nd of this year." Record support for that statement is not entirely clear. That confusion exists on this point is borne out by the fact that CSB did not continue the argument on appeal, but instead now contends that Mother waived the argument by failure to object.

{¶17} The appearance docket has four entries regarding attempted service of the permanent custody motion and hearing on Jason W., and those entries are conflicting as to whether those mailings were claimed or undelivered. Included in the muddle is the fact that following briefing, CSB filed a motion to supplement the record on appeal with documents that would seem to support the fact that certified mail did not reach Jason W. because the prison agents were "unable to identify" him.

{¶18} At the end of the day, assuming unperfected service and also assuming no waiver of the issue, Mother must nevertheless demonstrate that she herself has been prejudiced by the alleged error. This Court has previously held that a mere assertion that a purported father was not properly served is an insufficient basis on which to award standing to the appellant-mother to raise such error. *In re L.A.*, 9th Dist. No. 21531, 2003-Ohio-4790, ¶ 56; *In re Rackley*, 1998 WL

162845, *2; *In re Matis*, 1995 WL 314683, *4. *Accord In re Sours,* 3d Dist. No. 5-86-38, 1988 WL 81057, *2 (Sept. 27, 1988); *In re Kincaid*, 4th Dist. No. 00CA3, 2000 WL 1683456, *3 (Oct. 27, 2000). It is necessary, instead, for the appealing party to demonstrate that she was "actually prejudiced" by the alleged error before she may assert it on her own behalf; otherwise she lacks standing to raise the issue. *In re Jordan*, 9th Dist. Nos. 20773, 20786, 2002 WL 121211, *7 (Jan. 30, 2002). Therefore, in order to establish standing, Mother was required to demonstrate that the alleged failure to perfect timely service upon Jason W. resulted in actual prejudice to her. We conclude that she has not done so.

{¶19} Mother has offered no evidence of any reasonable likelihood that the trial court would have awarded custody to Jason W. – or to Travonne M. or John Doe, for that matter – if any of them had appeared to defend against the motion for permanent custody. At the time of the permanent custody hearing, the children were nine, eight, six, and four years of age, and there is no evidence that any of these men have had any contact or involvement with any of the children. Nor is there any evidence that either of the alleged fathers participated in the proceeding, acted in loco parentis to the children, established paternity, or asserted any interest in obtaining custody of any of the children. A finding of no prejudice and a lack of standing has been found in cases with similar facts. *See, e.g., In re E.S.B.*, 8th Dist. Nos. 87669, 87673, 2006-Ohio-5002, ¶ 7 (purported father was never married to mother, never established paternity, showed no interest in obtaining custody, and appeared earlier in proceeding to agree to permanent custody); *In re D.H.*, 8th Dist. No. 82533, 2003-Ohio-6478, ¶ 9 (purported father never came forward, never submitted to a paternity test, and never asserted an interest in obtaining custody); *In re Ciara B.*, 6th Dist. No. L-97-1264, 1998 WL 355869, *2 (July 2, 1998)

(purported father did not attempt to establish a substantial relationship with the children, had very little contact with the children, and there is doubt as to paternity).

{¶20} Contrary results may be distinguished on their facts. For example, in *In re Jones*, 8th Dist. No. 76533, 2000 WL 1739228 (Nov. 22, 2000), a majority of the court held that the mother had standing to assert defective service upon an alleged father where the notice "contained absolutely no accurate information sufficient to apprise [the father] of the pendency of an action relative to his child." *Id.* at *2, *4. The published notice included the incorrect case number and named a different child. *Id.* at *2. Also, in *In re Call*, 8th Dist. No. 78376, 2001 WL 370526 (Apr. 12, 2001), the court found that a father had standing to assert defective service on a mother to whom he had been married and where the published notice was deficient. *Id.* at *4. There was no affidavit showing reasonable diligence and the published notice included no last known address. *Id.*

{¶21} Mother claims that she has been prejudiced, and, therefore, has standing to assert improper service in regard to a non-appealing alleged father "[t]o the extent [she] will retain residual parental rights in the event an unserved father appears with respect to her children." This argument is entirely speculative and does not demonstrate actual prejudice to Mother. The Third District has similarly concluded that a claim of prejudice based on the possibility that a mother might retain residual parental rights if the biological father had been properly served and obtained custody was "based upon speculation only" where there was no evidence that the father had any significant involvement in child's life. *In re Cook*, 3d Dist. No. 5-98-16, 1998 WL 719524, at *6 (Oct. 8, 1998).

{¶22} Furthermore, if a bare claim of a potential of loss of residual parental rights were sufficient to demonstrate prejudice and award standing to the appealing party, virtually any

parent in this situation could make such a claim. Consequently, in the absence of evidence that Mother was prejudiced by the alleged error, this Court concludes that Mother lacks standing to assert error in regard to service upon Jason W.

{¶23} Finally, this Court considers Mother's claim of defective service regarding John Doe. Mother contends that permitting publication service on John Doe to proceed while the permanent custody hearing was ongoing was in violation of R.C. 2151.29, which requires publication to be completed at least one week before the hearing. This Court finds that the same procedure has been utilized in other cases, either by order of the court or by agreement of the parties. *See, e.g., In re Michaels*, 11th Dist. No. 2001-L-029, 2001 WL 705564, at *1 (June 22, 2001) (where service by publication was accomplished while case proceeded, but before it was concluded, the court held that any defect was cured since natural father was given full notice and had an opportunity to be heard); *In re D.P.*, 9th Dist. No. 22257, 2004-Ohio-7173, ¶ 40 (where Mother named an additional alleged father on first day of hearing, parties agreed to allow hearing to go forward while service was accomplished).

{¶24} This Court cannot conclude that Mother has demonstrated that actual prejudice has accrued to her in regard to the alleged defective service upon John Doe. There is no evidence that John Doe is likely to have gained custody of any of the children or would have been able to contribute to Mother's case. Mother's argument in regard to John Doe is without merit. Mother's assignment of error is overruled.

III.

{¶25} Subsequent to briefing in this case, CSB filed a motion to supplement the appellate record with documents purportedly related to service. The motion is hereby denied.

**{¶26}** Mother's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

WHITMORE, P. J.
MOORE, J.
CONCUR.

APPEARANCES:

CHRISTOPHER M. VANDEVERE , Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.