[Cite as *In re X.H.*, 2022-Ohio-779.]

STATE OF OHIO      )              IN THE COURT OF APPEALS
                       )ss:          NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT    )

IN RE: X.H.                      C.A. Nos.    30115
      M.H.                                    30116


APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.    DN 19-10-865
                    DN 19-10-866

DECISION AND JOURNAL ENTRY

Dated: March 16, 2022

---

CARR, Judge.

**{¶1}** Appellant Mother appeals the judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights to two of her children and placed them in the permanent custody of Summit County Children Services Board ("CSB" or "the agency"). This Court affirms.

I.

**{¶2}** Mother is the biological mother of X.H. (d.o.b. 4/7/11) and M.H. (d.o.b. 2/28/12). Father is the presumed legal father of the children because he and Mother were married at the time the children were born. Mother has three other children who were also involved with CSB at the same time as X.H. and M.H. were, but those children are not subjects of this appeal.

**{¶3}** Although Mother was the legal custodian of the five children, she had left them in the care and physical possession of their maternal grandparents for approximately four years. An

adult maternal uncle also lived in that home. After investigating a referral regarding concerns for the children's well-being, CSB removed the five children from the grandparents' home. All three adults in the home had limited mobility and significant health issues, leaving the oldest child, a then-11-year-old, to care for his four younger siblings. The home reeked of human waste, was infested with bed bugs, had no beds for the children who slept on the floor, had no working refrigerator, and had a stove that must be unplugged when not in use due to a safety issue.

{¶4} CSB filed complaints, alleging all five children to be abused, neglected, and dependent. The agency withdrew its allegations of abuse and neglect as to X.H. and M.H.[1] Mother stipulated that X.H. and M.H. were dependent, and the agency presented additional evidence in Father's absence. The juvenile court adjudicated the children dependent. After a dispositional hearing, X.H. was placed in the temporary custody of a kinship caregiver, while M.H. was placed in the temporary custody of CSB. The juvenile court adopted the agency's case plan as the order of the court.

{¶5} The goal of the case plan was reunification of the children with their parents. Mother was required to obtain mental health and parenting assessments and follow all recommendations, obtain and maintain independent housing that would be appropriate for five children, and obtain and maintain fulltime employment to adequately meet the basic needs of the children.

{¶6} CSB eventually filed motions for permanent custody of X.H., M.H., and their older brother.[2] Mother filed alternative motions for legal custody of all five children or six-month extensions of temporary custody. After a final dispositional hearing regarding only the three oldest

---

[1] The record does not contain all the information relevant to the three other siblings.
[2] CSB did not include the two youngest siblings in its motion for permanent custody. The dispositions of those two children are not in the record before this Court.

children, the juvenile court granted permanent custody of X.H. and M.H. to CSB, but granted a six-month extension of temporary custody regarding the oldest child.[3] Mother filed a timely appeal and raises two assignments of error for review.

II.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR IN GRANTING PERMANENT CUSTODY OF THE CHILDREN TO CSB WHEN FATHER WAS NOT AFFORDED AN OPPORTUNITY TO BE INVOLVED IN THE CASE IN VIOLATION OF RIGHTS TO DUE PROCESS AND IN FINDING THAT CSB ENGAGED IN REASONABLE REUNIFICATION EFFORTS WITH THE PARENTS.

{¶7} Mother argues that, because CSB failed to properly serve Father with the summons and the complaint, its use of reasonable efforts to facilitate reunification of the children with the parents was illusory and ineffectual, thereby requiring reversal of the permanent custody judgment. This Court declines to address the substance of Mother's argument because she lacks standing to raise these issues on Father's behalf on appeal.

---

[3] The original complaint regarding the oldest sibling had been dismissed based on the agency's inability to meet the statutory time limits for adjudication and initial disposition. CSB refiled the complaint. Although the juvenile court found that "Mother had not completed her case plan[,]" because of the additional time remaining in the oldest sibling's case and that child's expressed desire to live with Mother, the court granted a six-month extension of temporary custody "to afford Mother one last chance with this [oldest] child."

{¶8} Mother cites *In re Jones*, 8th Dist. Cuyahoga No. 76533, 2000 WL 1739228 (Nov. 22, 2000), at *4, for the proposition that a parent has standing to challenge a permanent custody judgment for lack of service on the other parent based on prejudice to the parents' potential retention of parental residual rights. *In re Jones* involved an agency complaint for permanent custody. The juvenile court held both the adjudicatory and permanent custody hearings on the same day. *Id.* at *1. The appellate court determined that the putative father had not received notice regarding the permanent custody hearing. *Id.* at *2. Reasoning that the interests of parents are aligned when the agency must prove that a child cannot or should not be returned to either parent, the Eighth District concluded that "[w]here one parent is unable to defend against this challenge [due to lack of notice of the proceedings], prejudice to the other parent is inherent." *Id.* at *3. This Court is not persuaded by our sister district's conclusion.

{¶9} This Court has previously considered a parent's appeal from an award of permanent custody where the agency had not perfected service of the permanent custody motion upon the other parent. *In re A.M.*, 9th Dist. Summit No. 26141, 2012-Ohio-1024. In that case, despite recognizing that unperfected service implicates a lack of personal jurisdiction which is waived when not properly preserved by objection, we acknowledged that "[a] reviewing court has discretion to ignore a waiver [of personal jurisdiction] in appropriate cases[.]" *Id.* at ¶ 13, 16. Addressing the parent's challenge to the lack of service upon the other parent, this Court held that the appealing parent must "demonstrate that she was 'actually prejudiced' by the [lack of service on the other parent] before she may assert [the alleged error] on her own behalf; otherwise she lacks standing to raise the issue." *Id.* at ¶ 18, quoting *In re Jordan*, 9th Dist. Summit Nos. 20773 and 20786, 2002 WL 121211 (Jan. 30, 2002). Moreover, an "argument [that] is entirely speculative * * * does not demonstrate actual prejudice[.]" *In re A.M.* at ¶ 21.

{¶10} In this case, Mother claims that lack of service on Father prejudiced her because he would have been able to participate in the proceedings, challenge the agency's allegations in the complaint, and work on case plan objectives to attempt to reunify with the children. As in *In re A.M.*, we conclude that Mother's argument is mere speculation and does not demonstrate that Mother suffered actual prejudice. There is no indication that Father had any meaningful relationship with X.H. and M.H. prior to their removal from the maternal grandparents' home. Moreover, it is difficult to understand how Father would have been successful in challenging CSB's allegations of dependency when Mother stipulated to those allegations as true. Under these circumstances, we conclude that Mother lacks standing to challenge the juvenile court's alleged lack of personal jurisdiction over Father on his behalf. This Court declines to address the substance of Mother's first assignment of error.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR IN DENYING MOTHER'S MOTION FOR LEGAL CUSTODY OR IN THE ALTERNATIVE MOTHER'S MOTION FOR SIX-MONTH EXTENSION AND IN FINDING THAT IT WAS IN THE CHILDREN'S BEST INTEREST TO BE PLACED IN THE PERMANENT CUSTODY OF CSB. THE TRIAL COURT'S DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶11} Mother argues that the juvenile court's judgment awarding permanent custody of the children to CSB was against the manifest weight of the evidence. This Court disagrees.

{¶12} In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations and citations omitted.)

*Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21.

{¶13} Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned; orphaned; has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; the child or another child of the same parent has been adjudicated abused, neglected, or dependent three times; or that the child cannot be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D)(1). R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 98-99 (1996). The best interest factors include: the interaction and interrelationships of the child, the wishes of the child, the custodial history of the child, the child's need for permanence and whether that can be achieved without a grant of permanent custody, and whether any of the factors outlined in R.C. 2151.414(E)(7)-(11) apply. R.C. 2151.414(D)(1)(a)-(e); *see In re R.G.*, 9th Dist. Summit Nos. 24834 and 24850, 2009-Ohio-6284, ¶ 11. Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." (Internal quotations omitted.) *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶14} As to the first prong, CSB alleged that X.H. and M.H. could not or should not be returned to either parent pursuant to R.C. 2151.414(B)(1)(a). The juvenile court found that the agency had met its burden of proof based on one of the two subsection (E) grounds alleged. That subsection provides:

> In determining at a hearing [on a motion for permanent custody] whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a [permanent custody] hearing * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
>
> (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

Although the agency might allege alternative first-prong grounds in support of its motion for permanent custody, it need only prove one. *In re T.B.*, 9th Dist. Summit Nos. 29560 and 29564, 2020-Ohio-4040, ¶ 11.

{¶15} This Court concludes that CSB proved by clear and convincing evidence that Mother failed continuously and repeatedly to substantially remedy the conditions that led to the children's removal. *See* R.C. 2151.414(E)(1). The agency removed the children and their siblings from their maternal grandparents' home, where Mother had left the children for approximately four years. Neither Mother nor Father had been the caregivers for the children during that extended period of time. Accordingly, both parents were required to demonstrate that they were able to provide safe and stable homes for the children. Father failed to participate in any reunification efforts during the case.

{¶16} Almost a year after the case plan was adopted, Mother submitted to a mental health assessment and was diagnosed with cyclothymic disorder, characterized by rapid mood swings ranging from depression to mania. She was also referred for an intensive in-home parenting

program.  Mother engaged sporadically in mental health therapy.  She refused to allow her assigned parenting education behavioral health specialist into her home.  The specialist, therefore, was only able to work with Mother immediately prior to visits at the visitation center.  Mother did not consistently participate in those sessions either.  While Mother could recite the textbook answers when questioned regarding appropriate parenting behaviors, the behavioral specialist testified the Mother never demonstrated that she understood how to apply those skills during interactions with the children.  Moreover, Mother failed to implement any suggestions by her parenting coach, instead ignoring them or becoming angry.

{¶17}  During visits, Mother focused on X.H. and her older brother, doting on them.  Although X.H. was only ten years old at the time, Mother engaged the child in adult conversations regarding Mother's relationship with her paramour and her alcohol use.  Mother effectively ignored M.H. and the two youngest siblings during visits.  For example, when ordering food for the five children, Mother only sought input from X.H. and the oldest child regarding their preferences.  On some occasions, Mother failed to say goodbye to M.H. at the end of visits.  The behavioral specialist, CSB caseworker, and guardian ad litem all testified that there was no discernible bond between Mother and M.H.

{¶18}  Mother obtained employment during the case and earned enough money to support the three oldest children[4] if she budgeted carefully.  She refused to apply for housing with the local housing authority because she had no means of transportation and insisted on limiting herself to a very narrow area so she could walk to work.  Mother at all times during the case lived in her paramour's one bedroom apartment.  While the size of the apartment was inadequate for the

---

[4] There were vague references in the record that the agency may have been trying to place the youngest two children in the legal custody of paternal relatives.

children, the caseworker was unable to assess other issues with Mother's housing because Mother refused to give the caseworker access to her home.

{¶19} Based on this Court's review, CSB established by clear and convincing evidence that Mother and Father had failed to remedy the concerns that led to the children's removal from their home. Father remained uninvolved with the children. Mother failed to demonstrate appropriate parenting skills. She confided in the ten-year-old X.H. as an adult, discussing adult topics beyond the child's emotional maturity. She failed to nurture or engage with M.H. in any meaningful way. Mother failed to secure housing that would accommodate the children. Accordingly, the juvenile court's first-prong finding that X.H. and M.H. could not or should not be returned to the parents' care was not against the manifest weight of the evidence.

{¶20} The agency further demonstrated that permanent custody was in the best interest of the children. Despite being in Mother's legal custody, the children spent the four years prior to their removal in the care and physical custody of their grandparents and uncle, while Mother lived elsewhere with her paramour. After the children were removed, Mother visited them fairly consistently. She focused her time and interest on X.H. and the oldest sibling, engaging only superficially with M.H. and the two youngest siblings. Mother and X.H. shared a bond but not as mother and child. Rather, Mother treated X.H. as a peer even though the child's maturity level was that of a typical ten-year-old. There was no evidence of a bond between Mother and M.H. who frequently expressed anger and frustration due to Mother's lack of engagement with her.

{¶21} X.H. and M.H. are close in age and share a sisterly bond although they were placed in separate foster homes. Both girls are engaged in counseling. X.H. was diagnosed with major depression. Her mood has stabilized. M.H. was diagnosed with ADHD which is managed with medication. She too has stabilized and was doing well in school. Mother showed no empathy or

understanding regarding M.H.'s mental health issues. Instead, when Mother engaged at all with M.H., it was typically to scold the child for her behavior.

{¶22} While X.H. expressed a desire to see Mother, she told the guardian ad litem that she wanted to live with her current foster parents. M.H. did not want to live with Mother or return to her grandparents' home, but also wanted to remain in her current placement. The guardian ad litem opined that it was in the children's best interest to be placed in the permanent custody of CSB, particularly in light of Mother's resistance to addressing her parenting deficiencies, her lack of adequate housing, the absence of a bond between Mother and M.H., and Mother's age inappropriate behavior with X.H.

{¶23} After four years of living apart from Mother who was their legal custodian, and 21 months outside of their grandparents' home, the children require permanence. Mother failed to demonstrate the ability to provide an appropriate home for the children. She had no appropriate housing. While Mother could parrot appropriate parenting techniques, she failed to apply healthy parenting skills in her interactions with the children.

{¶24} CSB had rejected the grandparents' home as a viable placement option due to ongoing issues there. The uncle in the home had died, the grandmother had had a stroke and was residing in a nursing home, and the grandfather supported the children's removal from his home. Although the children's respective foster families were not willing to adopt the children, both households agreed to provide homes for the children for as long as necessary until a permanent placement could be found.

{¶25} Based on a thorough review of the record, this is not the exceptional case in which the trier of fact clearly lost its way and committed a manifest miscarriage of justice by terminating the parents' parental rights and awarding permanent custody of X.H. and M.H. to CSB. Neither

parent addressed the parenting deficiencies identified by the agency. Mother failed to develop the insight or skills to allow her to provide for the children's physical, emotional, and developmental needs. Under the circumstances, CSB established by clear and convincing evidence that an award of permanent custody was in the best interest of the children. Accordingly, the juvenile court's judgment terminating Mother's and Father's parental rights and placing X.H. and M.H. in the permanent custody of the agency was not against the manifest weight of the evidence.

{¶26} This Court rejects Mother's argument that the juvenile court erred by denying her alternative motions for legal custody or a second six-month extension of temporary custody. We have consistently held that, when an award of permanent custody is in the best interest of the children, then legal custody to any person or an extension of temporary custody necessarily are not. *See, e.g., In re D.T.*, 9th Dist. Summit No. 29876, 2021-Ohio-1650, ¶ 15 (regarding legal custody), and *In re L.T.*, 9th Dist. Summit No. 29972, 2022-Ohio-114, ¶ 33 (regarding an extension of temporary custody). Moreover, to justify a second six-month extension of temporary custody, there must be clear and convincing evidence that the additional extension is in the best interest of the children, that the parent has made substantial additional progress toward reunification since the first extension, and that there is reasonable cause to believe that reunification will occur within the extension period. R.C. 2151.415(D)(2). In addition to a lack of evidence indicating that an additional extension was in the best interest of these children, Mother had not made substantial progress on her case plan objectives, and there was no reasonable cause to believe that either child could be reunified with her within the remaining three months of the case allowed by statute. *See* R.C. 2151.415(D)(2). Mother's second assignment of error is overruled.

III.

**{¶27}** Mother's second assignment of error is overruled. Mother lacks standing to challenge the issue raised in her first assignment of error, and this Court, therefore, declines to address it. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

HENSAL, P. J.
SUTTON, J.
CONCUR.

APPEARANCES:

SHUBHRA N. AGARWAL, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.

NOWAR KATIRJI, Attorney at Law, for Appellee.

BRENDON KOHRS, Attorney at Law, for Appellee.

MYRA COTTRILL, Guardian ad Litem.