[Cite as *In re D.J.*, 2025-Ohio-2573.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| In the Matter of: | : | |
| | | No. 23AP-548 |
| [D.J., | : | (C.P.C. No. 19JU-1896) |
| T.J., | : | (REGULAR CALENDAR) |
| Appellant]. | : | |

D E C I S I O N

Rendered on July 22, 2025

**On brief:** *Mitchell A. Williams*, Public Defender, and *Timothy E. Pierce*, for appellant. **Argued:** *Timothy E. Pierce*.

**On brief:** *Sharon K. Carney*, for Franklin County Children Services. **Argued:** *Sharon K. Carney*.

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations, Juvenile Branch

LELAND, J.

{¶ 1} Appellant, T.J., mother of the minor child, D.J., appeals the decision of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, granting permanent custody of D.J. to appellee Franklin County Children Services ("FCCS").[1] For the following reasons, we affirm.

**I. Facts and Procedural History**

{¶ 2} T.J. and S.B., father of the minor child, lived together in Ohio for several months before they moved to Florida. T.J. became pregnant during the relationship and returned to Ohio alone. D.J. was born on April 2, 2016. T.J. was married to M.J. at the

---

[1] This case was supervised by Permanent Family Solutions Network, a managed care provider in contract with FCCS.

time, and he signed the birth certificate as the father. T.J. and M.J. were divorced in December 2016, and the decree indicates no children were born as issue of the marriage.

{¶ 3} S.B. returned to Ohio and sporadically visited D.J. until 2018. S.B. moved to Indiana with his girlfriend and her child, and did not have any further contact with D.J. until 2022.

{¶ 4} In September 2018, FCCS became involved with T.J. and her children after multiple allegations regarding neglect and physical abuse. On September 14, 2018, a complaint alleging D.J. was a dependent child was filed, and FCCS received a temporary order of custody on September 17, 2018. D.J. was placed in foster care with eight of her siblings who have been adopted by the foster parents. She has been in the same foster home since her removal in September 2018.

{¶ 5} M.J. filed a motion for legal custody on March 4, 2019. T.J. informed FCCS that S.B. was the putative father, and service by publication was made on him regarding an adjudicatory hearing on April 24, 2019. M.J. appeared, but T.J. and S.B. did not appear. D.J. was adjudicated a dependent child, and FCCS received temporary court custody.

{¶ 6} A reunification case plan was adopted by the juvenile court, and T.J. was ordered to take parenting classes, submit to random drug screens, maintain safe and stable housing and income, provide a protective and safe environment for her children, and complete alcohol and drug ("AOD") and mental health assessments and comply with any recommendations. M.J. was ordered to complete a domestic violence assessment and to submit to random drug screens.

{¶ 7} On September 30, 2019, temporary custody to FCCS was extended, and on December 4, 2020, temporary custody was extended for a second and final time. The extensions were necessary because of lack of progress with case plan objectives.

{¶ 8} FCCS filed a motion for permanent custody on June 25, 2020. S.B.'s address was unknown, and he was served by publication. FCCS's first recorded contact with S.B. was in February 2022, and he was offered visitation with D.J. beginning in April 2022. FCCS commenced an investigation pursuant to the Interstate Compact on the Placement of Children ("ICPC") because S.B. resided in Indiana.

{¶ 9}   On August 10, 2022, S.B. filed a motion for genetic testing and to set custody. On March 17, 2023, S.B. was established as the biological father of D.J., and M.J. was subsequently disestablished as the father.

{¶ 10}  On May 10, 2023, the juvenile court conducted an in-camera interview with D.J.  The permanent court commitment ("PCC") trial commenced on August 1, 2023.  T.J. was not present, but her counsel indicated she was uncontested as to the motion for permanent custody.  S.B. was present with counsel, but withdrew his motion for legal custody and also proceeded uncontested.  The parties stipulated that D.J. had been in the custody of FCCS for 12 of the last 22 months, so the only issue before the court was whether permanent custody was in D.J.'s best interest.

{¶ 11}  FCCS presented testimony from the caseworker and guardian ad litem ("GAL").  The caseworker testified that T.J. completed an AOD assessment and treated for approximately four months in 2018 and that she was in a Suboxone treatment program, but otherwise did not comply with the case plan.  T.J. participated in supervised visitation with D.J. at FCCS, but the last visit occurred in November 2021, and there has been no contact since.

{¶ 12}  The caseworker testified that once S.B. engaged with FCCS, he was allowed to spend time with D.J.  S.B. was requested to establish a relationship with D.J., participate in a home study, and submit to random drug screens.  FCCS did not have any specific case plan objectives for S.B., and he was not added to the case plan.  The caseworker testified that S.B. visited on a regular basis but that the bond between father and daughter did not develop as hoped.  The Permanent Family Solutions Network had contacted other relatives for a potential placement, but none were appropriate.

{¶ 13}  The caseworker recommended it would be in D.J.'s best interest to remain in the foster home with her siblings.

{¶ 14}  The GAL testified that she was appointed as guardian for D.J. in September 2018 and had been working with the family even before that.  The GAL testified that T.J. was no longer involved and that she first became aware of S.B. from the foster mother in February 2022.  The GAL has observed S.B. and D.J. together, and testified that, over the course of time, their visits became closer with more interaction.  The GAL testified that she

visited S.B. at his home in Indiana and did not believe that he required any services. The GAL noted the case had been open for several years before S.B. engaged with D.J.

{¶ 15} The GAL determined that D.J. was bonded with her foster family and was thriving at home and school. The GAL testified that D.J. wished to remain with her siblings and foster parents, and recommended the court grant permanent custody as being in D.J.'s best interest.

{¶ 16} On August 23, 2023, the juvenile court issued a judgment entry granting permanent custody of D.J. to FCCS. T.J. now brings the instant appeal.

## II. Assignments of Error

{¶ 17} T.J. appeals and assigns the following three assignments of error for our review:

> [I.] The lower court erred under principles of plain error or otherwise when it determined Franklin County Children Services (FCCS) and/or Permanent Family Solutions Network (PFSN) made reasonable efforts to reunify D.J. with her biological Father S.B. and/or Mother T.J. when FCCS and/or PFSN and/or the court did not include or add S.B. to the case plan. Its decision below therefore undermined and deprived Mother T.J. of her residual rights to parent D.J. pursuant to R.C. 2151.011(B)(21) and (B)(50), R.C. 2151.01, R.C. 2151.412(A), Juv. R. 2(X), Juv. R. 2(NN), Juv. R. 34(F), the Fifth and Fourteenth Amendments of the United States Constitution, and Article I, Sections 1 and 16 of the Ohio Constitution.

> [II.] The lower court erred under principles of plain error or otherwise when it ordered the Indiana Interstate Compact on the Placement of Children (ICPC) investigation and/or failed to terminate the same regarding noncustodial parent S.B.'s home and living arrangements, and further when it considered the results of that study in granting the agency's PCC motion. The court's actions violated both parents' Right to Due Process of Law under the Fifth and Fourteenth Amendments of the United States Constitution, the Due Course of Law provisions of Article I, Sections 1 and 16 of the Ohio Constitution, R.C. 5103.23, R.C. 2151.01 and Mother T.J.'s residual rights to parent D.J. pursuant to R.C. 2151.011(B)(21) and (B)(50), Juv. R. 2(X), Juv. R. 2(NN).

> [III.] The lower court's decision granting PCC to the agency was not founded on sufficient evidence and ran against the manifest weight of the evidence.

## III. Discussion

{¶ 18} In her first assignment of error, T.J. contends the trial court erred in finding reasonable efforts were made on the case plan when FCCS did not add S.B. to the case plan. In her second assignment of error, T.J. argues the court erred by ordering the ICPC investigation in Indiana and then considering the results. Because these actions involve S.B. and not T.J., we first question T.J.'s standing to assert these arguments on S.B.'s behalf, who did not file an appeal.

{¶ 19} Standing is a preliminary inquiry that is required before a court can consider the merits of a claim. *State ex rel. Merrill v. Ohio Dept. of Natural Resources*, 2011-Ohio-4612. A person has standing when he or she has a " 'right to make a legal claim.' " *Ohio Pyro Inc. v. Ohio Dept. of Commerce*, 2007-Ohio-5024, ¶ 27, quoting *Black's Law Dictionary* (8th Ed. 2004) 1472. A party with standing has a real interest in the subject matter of the action and is vested with the right to maintain an action. *In re E.W.*, 2006-Ohio-2609 (10th Dist.).

{¶ 20} A person generally does not have standing to argue issues affecting another person and cannot raise issues on appeal on another party's behalf when that party failed to appeal the issues. *In re D.T.*, 2008-Ohio-2287 (10th Dist.); *see In re J.C.*, 2010-Ohio-2422 (10th Dist.) (mother lacked standing to assert rights belonging to grandmother who did not appeal). A party must be aggrieved by the final order and can only appeal " 'errors injuriously affecting the appellant.' " *In re D.K.*, 2024-Ohio-1149, ¶ 19 (4th Dist.), quoting *State ex rel. Gabriel v. Youngstown*, 75 Ohio St.3d 618, 619 (1996). An appealing party can only challenge how a decision impacted the appellant's rights and not the rights of a non-appealing party. *In re S.Y.*, 2011-Ohio-4621 (5th Dist.).

{¶ 21} However, an appealing party can lay stake to a claim of a non-appealing party if the error is prejudicial to the rights of the appealing party. *In re Johnson*, 2004-Ohio-3886 (10th Dist.). Actual prejudice must be shown. *In re M.A.P.*, 2023-Ohio-1755 (5th Dist.). A mother has standing to raise an argument on behalf of a non-appealing father only if she can demonstrate personal prejudice. *In re U.G.*, 2022-Ohio-3905 (9th Dist.).

{¶ 22} T.J. argues that she was prejudiced because the failure to add S.B. to the case plan and error in the ICPC investigation negatively affected her residual parental rights. Residual parental rights are the rights, privileges, and responsibilities that remain with a parent when legal custody of a child has been transferred, and include the right to reasonable visitation, the right to consent to adoption, and the responsibility for child support. *In re R.R.*, 2007-Ohio-4808 (9th Dist.). These residual rights are preserved in legal custody actions but are divested upon an award of permanent custody to a public children services agency. *In C.R.*, 2006-Ohio-1191. T.J. asserts that had S.B. been included in the case plan and proper ICPC procedures followed, S.B. would have received legal custody and she would retain her residual parental rights. However, T.J.'s basic premise that S.B. would have been awarded legal custody is faulty, and does not confer standing.

{¶ 23} The mere possibility that S.B. would receive legal custody is not sufficient to establish actual prejudice. *State v. Jones*, 2016-Ohio-5105. Speculative claims do not establish actual prejudice, and a claim of prejudice based on the possibility that she might retain residual parental rights if S.B. had been awarded legal custody is based on pure speculation. *In re A.M.*, 2012-Ohio-1024 (9th Dist.). *See In re Cook*, 1998 Ohio App. LEXIS 5091 (3d Dist. Oct. 8, 1998) (mother's argument that she may have been able to retain residual parental rights if the child had been placed with non-appealing father was based on speculation only).

{¶ 24} S.B. withdrew his motion for legal custody and chose not to defend against the motion for permanent custody. The juvenile court found that permanent custody was in D.J.'s best interest, so an alternative disposition of legal custody necessarily was not. *In re X.H.*, 2022-Ohio-779 (9th Dist.). Any hope for an award of legal custody to S.B. was foreclosed, and T.J. is unable to demonstrate any actual prejudice. *In re J.F.*, 2011-Ohio-6695 (11th Dist.). Therefore, T.J. lacks standing to raise these issues on S.B.'s behalf. *Id.*

{¶ 25} Based on T.J.'s lack of standing, we overrule her first and second assignments of error.

{¶ 26} T.J. argues as her third assignment of error that the juvenile court's decision to grant permanent custody to FCCS was not based on sufficient evidence and was against the manifest weight of the evidence. Sufficiency of the evidence is a test of adequacy to determine if the evidence is legally sufficient to sustain a decision and is a question of law

to be reviewed de novo by this court. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). We will therefore reverse a juvenile court's decision to grant permanent custody only if there is a sufficient conflict in the evidence presented. *In re J.H.*, 2021-Ohio-807 (10th Dist.).

{¶ 27} However, even if the juvenile court's decision is supported by sufficient evidence, "an appellate court may nevertheless conclude that the judgment is against the manifest weight of the evidence." *In re T.P.*, 2016-Ohio-72 (12th Dist.). A juvenile court's decision to grant permanent custody will not be reversed as being against the manifest weight of the evidence when the record contains competent, credible evidence by which the court could have found that the essential statutory elements for an award of permanent custody have been established. *In re Brown*, 2004-Ohio-3314, ¶ 11 (10th Dist.).

{¶ 28} Further, in determining whether a judgment is against the manifest weight of the evidence, the reviewing court is guided by the presumption that the findings of the trial court are correct. "In proceedings involving the custody and welfare of children the power of the trial court to exercise discretion is peculiarly important. The knowledge obtained through contact with and observation of the parties and through independent investigation cannot be conveyed to a reviewing court by printed record." (Internal quotations deleted and citations omitted.) *In re A.H.*, 2021-Ohio-1040, ¶ 30 (10th Dist.). We must weigh the evidence and any reasonable inferences, consider the credibility of witnesses, and determine whether the finder of fact lost its way in resolving conflicts in the evidence, and created a manifest miscarriage of justice that requires reversal of a decision. *Eastley v. Volkman*, 2012-Ohio-2179.

{¶ 29} It is clear that "parents have a constitutionally protected fundamental interest in the care, custody, and management of their children." *In re B.L.*, 2005-Ohio-1151, ¶ 7 (10th Dist.), citing *Santosky v. Kramer* (1982), 455 U.S. 745. While a parent has the essential and basic right to raise his or her child, those rights are not absolute and are subject to the ultimate welfare of the child. *In re S.R.*, 2006-Ohio-4983, ¶ 12 (10th Dist.). Thus, under certain circumstances, "the state may terminate the parental rights of natural parents when such termination is in the best interest of the child." *In re D.F.*, 2021-Ohio-446, ¶ 40 (10th Dist.).

{¶ 30} R.C. 2151.414 sets forth "the procedure for granting permanent custody of a child to an agency such as FCCS." *In re C.W.*, 2020-Ohio-1248, ¶ 54 (10th Dist.). The trial court applies a two-part permanent custody test and must first determine by clear and convincing evidence if one of the following factors exist: (a) the child cannot or should not be placed with the parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives able to take custody; (d) the child has been in the temporary custody of public or private children services agencies for 12 or more months of a consecutive 22-month period; or (e) another child of the parents has been adjudicated as abused, neglected, or dependent on three occasions. *In re R.G.*, 2013-Ohio-914 (10th Dist.). If one of the grounds is established, the court then determines if permanent custody is in the best interest of the child under the factors set forth in R.C. 2151.414(D). *Id.*

{¶ 31} Here, the parties stipulated that D.J. had been in FCCS's temporary custody for 12 or more months of a consecutive 22-month period, and the juvenile court found that R.C. 2151.414(B)(1)(d) is applicable. The court also found, as alternate grounds, that D.J. should not be placed with T.J. pursuant to R.C. 2151.414(B)(1)(a) and that T.J. abandoned D.J. pursuant to R.C. 2151.414(B)(1)(b). Therefore, the first part of the test is met, and the juvenile court need only determine that permanent custody is in D.J.'s best interest. R.C. 2151.414(D).

{¶ 32} An agency that seeks permanent custody of a child bears the burden of proving that the grant of permanent custody is in the child's best interest. *In re B.C.*, 2014-Ohio-4558, ¶ 26. The relevant statute, R.C. 2151.414(D)(1), provides:

> In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section 2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:
>
> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 33} A juvenile court must consider all relevant factors, including the non-exhaustive list of R.C. 2151.414(D)(1) best-interest factors. *In re A.M.*, 2020-Ohio-5102. In deciding whether a trial court based its decision upon clear and convincing evidence, we must review the record to determine if the court had sufficient facts before it to satisfy the requisite degree of proof.

{¶ 34} The juvenile court addressed each statutory best-interest factor in its decision. D.J. has no bond with T.J., and while S.B. did visit, his relationship with D.J. did not develop as hoped. D.J. has been with her foster parents since 2018 and was extremely bonded with her caregivers. The court noted that D.J. is very close to her eight siblings adopted by the foster parents and is well-adjusted in the foster home.

{¶ 35} D.J. has consistently stated that she wanted to live with her foster parents, although she once predictably favored her own bedroom and television at S.B.'s home. D.J. has never lived with S.B., and never visited his home. The juvenile court found that D.J was in dire need of secure permanent placement, and that permanent commitment was the only option.

{¶ 36} Under the final factor, the juvenile court noted that T.J. did not complete substance abuse treatment under her case plan and that she abandoned D.J.

{¶ 37} The juvenile court considered the five best-interest factors set out in R.C. 2151.414(D) and found that granting the PCC motion was in D.J.'s best interest. The court

found that FCCS had made reasonable efforts to address the issues that led to D.J.'s removal. While S.B. was never added as part of the case plan, the record indicates that FCCS was actively engaged with him. We also recognize that S.B. demonstrated his genuine desire to have custody of D.J. by making efforts to participate in visitations and recommendations FCCS established for him.

**{¶ 38}** We find that the juvenile court's best interest determination was based on competent and credible evidence. The record reflects that sufficient clear and convincing evidence supports the award of permanent custody to FCCS, and the decision is not against the manifest weight of the evidence. *In re J.P.*, 2024-Ohio-4916 (10th Dist.).

**{¶ 39}** T.J.'s third assignment of error is not well-taken and is overruled.

## IV. Conclusion

**{¶ 40}** For the reasons above, T.J.'s three assignments of error are overruled. The judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, granting permanent custody of D.J. to FCCS is affirmed.

*Judgment affirmed.*

BEATTY BLUNT and BOGGS, JJ., concur.

———————————