[Cite as *In re T.H.*, 2018-Ohio-1143.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: T.H.

C.A. No.     28833

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     DN-14-9-573

DECISION AND JOURNAL ENTRY

Dated: March 28, 2018

CALLAHAN, Judge.

{¶1}    Appellant, C.H. ("Mother"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that placed her minor child in the legal custody of a paternal cousin ("Cousin").  This Court affirms.

I.

{¶2}    Mother is the biological mother of several children, but T.H. is the only child at issue in this case.  Mother apparently lost custody of several other children in the past, but no details about those children are included in the record.  T.H.'s father ("Father") did not appeal from the trial court's final judgment.

{¶3}    On September 3, 2014, the Akron Police Department executed a search warrant at the home of both parents, who were under investigation for heroin trafficking.  Mother and Father were arrested at the scene, charged with felony drug offenses, and refused to disclose the location of T.H., who was then three years old.  CSB eventually located T.H. at the home of

Cousin and removed him from the parents' legal custody. The trial court later adjudicated T.H. a dependent child and placed him in the temporary custody of Summit County Children Services Board ("CSB"). This Court affirmed that judgment on appeal. *In re T.H.*, 9th Dist. Summit No. 28010, 2016-Ohio-5597, ¶ 1.

{¶4} Throughout this case, T.H. was placed in the home of Cousin. CSB filed a motion for the child to be placed in the legal custody of Cousin while the adjudication appeal was pending, but a hearing on that motion was stayed until after the appeal was resolved. The agency renewed its legal custody motion and the matter ultimately went to a final dispositional hearing before a visiting judge on May 23, 2017.

{¶5} After the hearing, the trial court found that it was in the best interest of T.H. to be placed in the legal custody of Cousin. Mother and Father appealed from that order, but the trial court had not entered an independent judgment placing T.H. in Cousin's legal custody. Consequently, this Court dismissed appeal numbers 28707 and 28714 on September 13, 2017, because the order appealed was not a final judgment.

{¶6} On October 20, 2017, the trial court entered a final judgment that placed T.H. in the legal custody of Cousin. Mother appeals and raises four assignments of error.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT ERRED IN DENYING APPELLANT-MOTHER'S MOTION TO DISMISS THE CASE WHERE THE TEMPORARY CUSTODY ORDER EXPIRED NEARLY EIGHT MONTHS PRIOR TO TRIAL[.]

{¶7} Mother's first assignment of error is that the trial court erred in denying her motion to dismiss the case. Mother argued that the temporary custody order had expired before the legal custody hearing and, therefore, the juvenile court had lost jurisdiction over this case.

Mother attempts to rely on R.C. 2151.353 and *In re Young Children*, 76 Ohio St.3d 632 (1996), which do not support her position.

{¶8}    R.C. 2151.353(G) provides that a trial court shall not order an existing temporary custody order to extend beyond the two-year sunset date.  The trial court did not order that temporary custody extend beyond two years, however.  Rather, T.H. remained in temporary custody because Mother appealed two interlocutory orders, divesting the trial court of jurisdiction to rule on CSB's motions to place the child in the legal custody of Cousin.  Further, because CSB filed motions for legal custody to Cousin long before the expiration of the temporary custody order, that temporary order extended by operation of law until the trial court ruled on the legal custody motion.  *See* R.C. 2151.353(G) and R.C. 2151.415(A)(3).

{¶9}    Moreover, even if the temporary custody order in this case had expired, the Ohio Supreme Court has held that "[t]he passing of the statutory time period ('sunset date') pursuant to R.C. 2151.353(F) does not divest juvenile courts of jurisdiction to enter dispositional orders." *In re Young* at syllabus.  Because *In re Young* involved four consolidated appeals, the Supreme Court explained the rationale of its holding as it applied to the different facts of those cases, two of which involved temporary custody orders that had expired.  *Id*. at 638-640.  It emphasized that a trial court retains jurisdiction even when a temporary custody order has expired unless the problems that led to the filing of the complaint "had been resolved or mitigated[.]"  *Id*. at 639. A parent asserting that his or her parenting problems have been resolved is not dispositive; it is for the trial court to make that determination.  *See id*. at 639-640.  Because Mother has failed to demonstrate that the trial court lost jurisdiction to rule on CSB's motion for legal custody to Cousin, her first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE DECISION PLACING THE CHILD IN THE LEGAL CUSTODY OF [COUSIN] FAIL[ED] TO RESOLVE ALL MOTIONS BEFORE THE COURT[.]

{¶10} Mother's second assignment of error is that the trial court failed to explicitly rule on her original or renewed motions to dismiss the case or her motions for legal custody of T.H. The trial court did explicitly deny Mother's motion to dismiss the complaint. Although the trial court's judgment did not explicitly deny Mother's motion for legal custody, because it granted legal custody to Cousin, which precluded Mother having legal custody, it implicitly denied Mother's motion. Moreover, "we have generally held that a trial court's failure to rule gives rise to a presumption that the trial court has denied the motion." *GMAC Mtge., LLC v. Jacobs*, 196 Ohio App.3d 167, 2011-Ohio-1780, ¶ 9 (9th Dist.). Mother's second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT GRANTED [CSB'S] MOTION FOR LEGAL CUSTODY TO [COUSIN.]

{¶11} Mother's third assignment of error is that the trial court's legal custody decision was not supported by the evidence presented at the hearing. Although she also alleges that the agency did not adequately perform its case plan duties, that argument will be addressed under Mother's fourth assignment of error.

{¶12} Mother argues that she had complied with some of the requirements of the case plan, but this Court has repeatedly stressed that "evidence of case plan compliance may be relevant to the trial court's best interest determination, but it is not dispositive." *In re G.A.*, 9th Dist. Summit Nos. 28664, 28665, 2017-Ohio-8561, ¶ 13, citing *In re J.J.*, 9th Dist. Summit No. 22236, 2004-Ohio-6538, ¶ 8. "Following an adjudication of neglect, dependency, or abuse, the

juvenile court's determination of whether to place a child in the legal custody of a parent or a relative is based solely on the best interest of the child." *See In re K.H.*, 9th Dist. Summit No. 27952, 2016-Ohio-1330, ¶ 12. "Although there is no specific test or set of criteria set forth in the statutory scheme, courts agree that the trial court must base its decision on the best interest of the child." *In re N.P.*, 9th Dist. Summit No. 21707, 2004-Ohio-110, ¶ 23, citing *In re Fulton*, 12th Dist. Butler No. CA2002-09-236, 2003-Ohio-5984, ¶ 11.

{¶13} The juvenile court is guided by the best interest factors set forth in R.C. 2151.414(D) relating to permanent custody. *In re B.G.*, 9th Dist. Summit No. 24187, 2008-Ohio-5003, ¶ 9, citing *In re T.A.*, 9th Dist. Summit No. 22954, 2006-Ohio-4468, ¶ 17. Those factors include the interaction and interrelationships of the child, the child's wishes, the custodial history of the child, and the child's need for permanence. The juvenile court may also look to the best interest factors in R.C. 3109.04(F)(1) for guidance. *In re K.A.*, 9th Dist. Lorain Nos. 15CA010850, 15CA010860, 2017-Ohio-1, ¶ 17.

{¶14} Mother's interaction with T.H. during this case was extremely limited. Although she points to evidence that she "visited with her son every Saturday[,]" she visited T.H. for only a few months before the hearing. She had no face-to-face interactions with T.H. for more than two years while she was incarcerated. Her interaction during that time was limited to phone calls with a very young T.H.

{¶15} Although Mother suggests that Cousin impeded her ability to visit with T.H. or speak to him on the phone, that argument is not supported by the record. Cousin had some concerns about facilitating contact between T.H. and Mother because Mother had harassed and threatened her. To minimize the conflict between Mother and Cousin, Mother was required to call T.H. on his own cellular phone, at reasonable hours of the day, and visit him in a setting

outside of Cousin's home that was supervised by someone else. Cousin recognized that T.H. should have a relationship with Mother and did facilitate their interaction. Despite Mother's suggestion to the contrary, there was no evidence that she was ever unable to reach T.H. on his phone if she called at an appropriate time.

{¶16} Cousin had been a loving, stable, and long-term caregiver for T.H. The child had spent nearly half of his life living with her. The caseworker and guardian ad litem agreed that T.H. was closely bonded to Cousin and that Cousin set appropriate boundaries for T.H. Cousin had been involved in the life of T.H. since he was an infant.

{¶17} The guardian ad litem opined that T.H. was not old enough to express his own custodial wishes. She believed that legal custody to Cousin was in the child's best interest. Cousin was meeting all of the child's needs and the guardian had observed "a very strong bond" between T.H. and Cousin. The guardian expressed concern that Mother was still on probation and had not demonstrated that she had resolved her parenting problems.

{¶18} The custodial history of T.H. before this case began was not explained at the hearing. He was found at the home of Cousin, but it is unclear where T.H. actually resided or whether his needs were adequately met. There was evidence that Mother has a lengthy criminal history and that she had lost custody of several other children, but none of those details were explained on the record.

{¶19} Throughout this case, T.H. resided with Cousin and was doing well in her home. After more than two years of living in this temporary placement, he was in need of a legally secure permanent placement and Cousin was prepared to provide him with a stable home.

{¶20} The additional factors set forth in R.C. 3109.04(F) also supported the trial court's best interest determination. Of relevance here, those factors include the child's adjustment to

home, school, and community and the mental and physical health of all persons involved. *See* R.C. 3109.04(F)(1)(d) and (e). The evidence was not disputed that T.H. had adjusted well to Cousin's home and that he was attending school regularly and doing well there.

{¶21} There were no concerns about Cousin's mental health, but CSB continued to have concerns about Mother's mental health and her lengthy history of substance abuse. Although Mother had been sober since her recent release from incarceration, she remained on house arrest and had yet to demonstrate the ability to sustain sobriety outside of a controlled setting.

{¶22} Mother has failed to demonstrate that the trial court's legal custody decision was not supported by the evidence presented at the hearing. Her third assignment of error is overruled.

### ASSIGNMENT OF ERROR IV

THE TRIAL COURT ERRED IN FINDING THAT [CSB] USED REASONABLE EFFORTS TO PREVENT THE CONTINUED REMOVAL OF THE CHILD FROM [MOTHER.]

{¶23} Finally, Mother argues that the trial court erred in finding that CSB made reasonable efforts to reunify T.H. with her. At the beginning of this case, Mother was sentenced to a three-year term of incarceration but was later released several months early. While Mother was incarcerated for more than two years, T.H. clearly could not return home, and the reunification services that CSB was able to provide were necessarily limited. "'Reasonable efforts' does not mean all available efforts." *In re Lewis*, 4th Dist. Athens No. 03CA12, 2003-Ohio-5262, ¶ 16. "[T]he issue is not whether the agency could have done more, but whether it did enough to satisfy the reasonableness standard under the statute." *Id*.

{¶24} Although Mother attempted to discredit CSB's evidence, the caseworker testified that she regularly communicated with Mother while she was incarcerated, either directly or

through her prison caseworker. She further testified that she reviewed information about programs that Mother completed while in prison, but that those programs did not satisfy the requirements of the case plan because they were not approved by the agency and were administered in a controlled environment. After Mother was released, she refused to sign releases of information to enable the caseworker to communicate with her service providers. Mother has failed to demonstrate that the trial court erred in concluding that CSB's efforts to reunify Mother with T.H. had been "reasonable." Mother's fourth assignment of error is overruled.

### III.

{¶25} Mother's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

LYNNE S. CALLAHAN
FOR THE COURT

SCHAFER, P. J.
HENSAL, J.
CONCUR.

APPEARANCES:

AVIVA L. WILCHER, Attorney at Law, for Appellant.

NEIL AGARWAL, Attorney at Law, for Appellee.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.

JOSEPH KERNAN, Guardian ad Litem.