[Cite as *In re U.G.*, 2022-Ohio-3905.]

STATE OF OHIO      )            IN THE COURT OF APPEALS
                )ss:        NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT     )

IN RE: U.G.                            C.A. No.       30193
      U.G.
      U.G.

                                  APPEAL FROM JUDGMENT
                                  ENTERED IN THE
                                  COURT OF COMMON PLEAS
                                  COUNTY OF SUMMIT, OHIO
                                  CASE Nos.     DN19-2-157
                                                     DN19-2-158
                                                      DN19-2-159

DECISION AND JOURNAL ENTRY

Dated: November 2, 2022

---

CALLAHAN, Judge.

**{¶1}** Appellant, M.G. ("Mother"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights and placed three of her minor children in the permanent custody of Summit County Children Services Board ("CSB"). This Court affirms.

I.

**{¶2}** Mother is the biological mother of the three children at issue in this appeal: U.G., born April 5, 2013; U.G., born April 13, 2016; and U.G., born July 20, 2017. Mother also has a younger child, B.G., who was born during the trial court proceedings and removed from her custody, but that child is not a party to this case. The fathers of the older two children were not involved in the trial court proceedings. The father of the youngest U.G. and B.G. ("Father") was involved in the trial court proceedings but did not appeal the trial court's judgment.

{¶3} This case has a long procedural history, but this Court will confine its review to the facts relevant to this appeal. On February 20, 2019, Akron Police officers were dispatched to Mother's home in response to her report that Father had forced his way into her home and physically assaulted her. When the police arrived, Father was no longer in the home, and they discovered that Mother had outstanding warrants for her arrest. Mother was taken into police custody and the children were removed pursuant to Juv.R. 6 because CSB was unable to find another caregiver at that time. CSB filed complaints and the children were later adjudicated dependent and placed in the temporary custody of CSB. The children were placed together in the home of a maternal aunt ("Aunt"), where they remained throughout this lengthy case.

{¶4} When this case began, Mother and Father had an on and off romantic relationship. Because there was a history of domestic violence in their relationship, the case plan required Mother and Father to obtain mental health assessments; sign releases of information; engage in counseling to improve their communication skills; and demonstrate that they could communicate in ways that "will not use physical intimidation or verbal aggression[.]" The case plan also required Mother to resolve her outstanding traffic and criminal charges and demonstrate that she could meet her children's basic needs. Both parents agreed to the terms of the original case plan, which was adopted by the trial court.

{¶5} Mother was also ordered to participate in mental health and drug counseling as part of a diversionary program in her criminal case on charges of felony forgery. Several months into this juvenile case, Mother was incarcerated for a few weeks because she had failed to comply with the requirements of the diversionary program.

{¶6} After her release from jail, Mother began counseling to work on her depression and history of domestic violence in her relationship with Father. According to the counselor's notes,

she and Mother discussed that Father had physically assaulted Mother during that period and Mother intended to get a restraining order to protect herself from him. Mother saw the counselor a total of six times and stopped attending sessions in January 2020. Mother later obtained a temporary protection order against Father, but the two violated that order multiple times, and Mother ultimately allowed the temporary order to expire.

{¶7} Throughout this case, Mother refused to cooperate with CSB, the guardian ad litem, or Aunt who was caring for the children. During October 2019, Mother revoked the information releases she initially signed, so, after that time, CSB was unable to verify whether Mother was complying with the reunification requirements of the case plan. Mother and Father actively harassed and threatened the caregivers and CSB staff via text messages, email, and social media. CSB later assigned a supervisor to assist the caseworker in her communications with the parents because the caseworker was afraid of Father. The threats continued and escalated to the point that, during one phone call with Mother and Father, Father told the supervisor that he knew the names and locations of the CSB staff members working on this case and that he could find people to get them, implying that he intended to cause harm to CSB staff members. CSB determined that Father had made credible threats, and, for the safety of its staff, the agency then required that all in-person communications with the parents occur at the agency headquarters.

{¶8} CSB moved for permanent custody of the three children, and Mother alternatively sought legal custody. After several extensions were granted at the request of the parties, the permanent custody hearing commenced on November 1, 2021. Following an evidentiary hearing before a visiting judge on the competing dispositional motions, the trial court terminated Mother's parental rights and placed the three children in the permanent custody of CSB. Mother appeals and raises three assignments of error.

II.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT COMMITTED PLAIN ERROR AND REVERSIBLE
ERROR IN DENYING MOTHER'S MOTION FOR A SIX-MONTH
EXTENSION AND IN FINDING THAT IT WAS IN THE CHILDREN'S BEST
INTEREST TO BE PLACED IN THE PERMANENT CUSTODY OF [CSB].
THE TRIAL COURT'S DECISION WAS AGAINST THE MANIFEST WEIGHT
OF THE EVIDENCE.

{¶9} Mother's first assignment of error challenges the evidence supporting the trial court's permanent custody decision. Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned; orphaned; has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; the child or another child of the same parent has been adjudicated abused, neglected, or dependent three times; or that the child cannot be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D)(1). R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 98-99 (1996). Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." (Internal quotations omitted.) *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶10} In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment]

must be reversed and a new [hearing] ordered." (Internal quotations and citations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id*. at ¶ 21.

{¶11} The trial court found that the first prong of the permanent custody test had been satisfied for alternative reasons, including that the children could not be returned to Mother within a reasonable time or should not be returned to her because she had failed "continuously and repeatedly to substantially remedy" the conditions that brought the children into agency custody and prevented them from returning to the custody of either parent. R.C. 2151.414(B)(1)(a); R.C. 2151.414(E)(1). Although Mother's brief suggests that she had complied with the reunification requirements of the case plan, she has not challenged the trial court's explicit first prong finding that clear and convincing evidence demonstrated that she had failed to remedy the conditions that had caused the prolonged removal of her children from her custody. In other words, the trial court's unchallenged finding under R.C. 2151.414(E)(1) is akin to a finding that Mother failed to make significant case plan progress.

{¶12} Mother asserts in her quoted assignment of error that the trial court should have instead granted her motion for a six-month extension of temporary custody. At the hearing, however, Mother sought a return of legal custody of the children, not an extension of temporary custody. The evidence before the trial court demonstrated that Mother had not made the requisite case plan progress which could have justified an extension of temporary custody under R.C. 2151.415(D)(2). Furthermore, by the time of the permanent custody hearing, well over two years had elapsed since CSB filed its complaints to remove these children from Mother's custody, so the trial court lacked statutory authority to grant any further extensions of temporary custody. R.C. 2151.353(G); R.C. 2151.415(D)(4).

{¶13} Mother challenges only the trial court's determination that permanent custody was in the children's best interest. In making its best interest determination, the trial court was required to consider the statutory best interest factors, which include: the interaction and interrelationships of the child, the wishes of the child, the custodial history of the child, the child's need for permanence and whether that can be achieved without a grant of permanent custody, and whether any of the factors outlined in R.C. 2151.414(E)(7)-(11) apply. R.C. 2151.414(D)(1)(a)-(e); *see In re R.G.*, 9th Dist. Summit Nos. 24834 and 24850, 2009-Ohio-6284, ¶ 11.

{¶14} Mother's interaction with her children was not consistent during the nearly three years that this case was pending. Initially, Mother's interaction with her children was limited to supervised visits at Aunt's home. After Mother complained about visiting at Aunt's home, the visits were moved to the family interaction center. The parents initially visited together but their visits were later separated because of altercations between the two. After the parents' visits were separated, Mother did not attend visits for the next four months.

{¶15} While Father was incarcerated for a few months on a domestic violence conviction, Mother was permitted to have visits in her home and her visitation later progressed to unsupervised, home visits. CSB later learned, however, that Mother was not abiding by agency rules during those visits. For example, the caseworker told Mother not to drive the children anywhere because she did not have a valid driver's license. Nevertheless, Mother drove the children to Cleveland during one visit. Mother also exposed the children to an unknown man who was living in her home and allowed Father to see the children after he was released from detention. Mother also stopped allowing the caseworker or the guardian ad litem into her home.

{¶16} Consequently, during July 2020, the trial court again ordered that Mother's visits with her children be supervised at the family interaction center. After the visits were returned to

the center, however, Mother refused to come because she did not want to be told when and where to visit but wanted the children to come to her home. Although Mother suggests in her brief on appeal that the COVID pandemic may have affected her ability to visit the children, there is no evidence in the record that the pandemic impeded her ability to have in-person visits with her children. By the time of the hearing, Mother had not attended in-person visits with the children for well over a year. She had seen them only once, several months earlier, because they all attended the funeral of the maternal grandmother.

{¶17} The caseworker and Aunt testified that the children were very hurt that Mother did not visit them. Both had told Mother that her failure to visit was upsetting to the children, who were only one, two, and five years old when this lengthy case began and did not understand why Mother was not visiting them. Nevertheless, Mother persisted in her refusal to attend visits at the center and, therefore, failed to maintain a relationship with her young children for a significant portion of their lives.

{¶18} Mother also jeopardized her relationship with her children by continuing her volatile relationship with Father, which had been one of the primary obstacles to her ability to reunify with them. Mother testified at the hearing that her relationship with Father was over, yet, three months earlier, she gave birth to another baby with him, B.G. Shortly after the birth of B.G., an incident of domestic violence between Father and Mother caused hospital security to escort Father out of the hospital. CSB remained concerned that, after two and a half years of reunification services, Mother had made little progress toward addressing her history as a victim of domestic violence. Despite ongoing warnings from CSB that she was risking the loss of her children, Mother continued to refuse to work with CSB toward reunification.

{¶19} The children's interaction with Aunt and her family, however, had been consistent and positive throughout their lives. Aunt was involved with the children before this case began and she had been providing them with a safe and stable home for nearly three years. Although Aunt had expressed an interest in legal custody of the children earlier in this case, her relationship with Mother had deteriorated and Mother no longer cooperated with her. Aunt was interested in adopting the children if CSB was granted permanent custody.

{¶20} The wishes of the children, then only three, four, and seven years old, were expressed through their attorney. The attorney informed the trial court that the children wanted to be returned to Mother's custody. No one testified about whether the children were mature enough to express their own wishes, however. *See* R.C. 2151.414(D)(1)(b) (the children's wishes should be expressed by the children directly or through the guardian ad litem, "with due regard for the maturity of the child[ren.]") The guardian ad litem recommended permanent custody because Mother had failed to work on the reunification goals of the case plan throughout this lengthy case and had failed to maintain a close and consistent relationship with her children.

{¶21} This case had been pending for nearly three years, during which the children had lived in a temporary placement with Aunt. They needed stability, which could be achieved by granting permanent custody to CSB. Mother had failed to cooperate with CSB or demonstrate that she was able to provide the children with a safe and stable home. The trial court did not lose its way by concluding that permanent custody was in the best interest of these children. Mother's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED PLAIN ERROR AND REVERSIBLE ERROR WHEN IT ENTERED AN ORDER ON THE MORNING OF THE DEADLINE [FOR] SUBMITTING PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW (WITHOUT

CONSIDERING MOTHER'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW); THE COURT ONLY CONSIDERED [CSB'S] PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW AND NEVER ALLOWED MOTHER TO SUBMIT SUCH PROPOSALS BEFORE ENTERING A FINAL APPEALABLE ORDER.

{¶22} Mother's second assignment of error challenges the trial court's adoption of the proposed findings of fact and conclusions of law filed by CSB. At the conclusion of the permanent custody hearing, the visiting trial judge stated that each party had the "opportunity to submit [] written proposed findings of fact and conclusions of law and a proposed final judgment entry[]" by November 29, the Monday after Thanksgiving. CSB filed its proposed findings and conclusions on November 22.

{¶23} The trial judge later signed CSB's proposed findings and conclusions, which were journalized on November 29 at 7:12 a.m. At that time, Mother had not filed anything. Mother faults the trial court for failing to wait until the end of the workday on November 29 for her to submit her own findings of fact and conclusions of law, but she has failed to demonstrate reversible error.

{¶24} To begin with, Mother has not cited any authority to support her underlying premise that her "opportunity" to submit proposed findings of fact and conclusions of law constituted a substantive right for her to do so. Under Civ.R. 52, the trial court had the discretion to permit one or both parties to submit proposed findings of fact and conclusions of law. Moreover, those proposed findings and conclusions of law served "only as an aid and did not relieve the trial court of its ultimate responsibility to ensure that its findings and conclusions were factually and legally accurate." *Valley City Elec. Co, Inc. v. RFC Contracting, Inc*., 9th Dist. Lorain No. 09CA009608, 2010-Ohio-964, ¶ 9, citing *Paxton v. McGranahan*, 8th Dist. Cuyahoga No. 49645, 1985 WL 6444, *4 (Oct. 31, 1985), citing Civ.R. 52.

{¶25} Mother further asserts that the visiting trial judge "admitted to his mistake" and stated that he would vacate the judgment and consider Mother's proposed findings and conclusions, but that "[t]he trial judge did not consider any filings from Mother." The record fails to support that assertion.

{¶26} To demonstrate that the judge "admitted to his mistake," Mother relies on a conversation her trial counsel had with the same visiting trial judge during a November 29 hearing in another case, involving Mother's youngest child, B.G. That transcript, however, is not properly part of the record in this appeal. *See* App.R. 9(A)(1) (the record on appeal consists of what was considered by the trial court in the case that is on appeal, which includes transcripts of hearings that are implicitly, and necessarily, limited to the transcripts of hearings held or considered by the trial court in this case).

{¶27} Even if Mother could establish that the trial judge said he would consider her proposed findings and conclusions, she did not file any. The record does not include anything filed by Mother after the permanent custody hearing other than motions pertaining to trial counsel's attorney fees and filings pertaining to this appeal. Because Mother has failed to demonstrate any error by the trial court, her second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED PLAIN ERROR AND REVERSIBLE ERROR WHEN IT REFUSED TO PERMIT FATHER'S ATTORNEY TO WITHDRAW FROM REPRESENTING FATHER, WHEN FATHER JOINED IN THE MOTION.

{¶28} Finally, Mother argues that the trial court committed reversible error because it refused to allow Father's trial counsel to withdraw during the hearing. Specifically, Mother argues that Father asserted his right to fire his trial counsel and represent himself during the hearing and was deprived of that right.

{¶29} CSB responds by arguing that Mother lacks standing to raise this argument on Father's behalf. A mother, who has an interest in preserving parental rights at a permanent custody hearing, has standing to raise an argument on behalf of the father if she can demonstrate personal prejudice. *See, e.g.*, *In re A.M.*, 9th Dist. Summit No. 26141, 2012-Ohio-1024, ¶ 13, citing *State v. Ward*, 9th Dist. No. 13462, 1988 WL 99182, *3 (Sept. 21, 1988). In her reply brief, Mother asserts that she suffered prejudice because, had Father's trial counsel been permitted to withdraw, the trial court might have granted an extension of temporary custody or placed the children in Father's legal custody. Either disposition would have prevented the termination of her parental rights.

{¶30} As explained in this Court's disposition of Mother's first assignment of error, however, the trial court lacked authority to grant another extension of temporary custody. Moreover, Father did not seek legal custody; he was not prepared to provide the children with a suitable permanent home; and permanent custody was in the children's best interest. *See*, *e.g.*, *In re X.H.*, 9th Dist. Summit Nos. 30115 and 30116, 2022-Ohio-779, ¶ 26 (if permanent custody was in the children's best interest, an alternative disposition of legal custody or an extension of temporary custody necessarily was not.). Therefore, Mother has failed to demonstrate that she suffered any prejudice by the trial court's refusal to allow Father's counsel to withdraw. Because Mother lacks standing to raise this issue on Father's behalf, this Court will not reach the merits of her third assignment of error.

### III.

{¶31} Mother's first and second assignments of error are overruled. This Court need not address the merits of Mother's third assignment of error because she lacks standing to assert it. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

LYNNE S. CALLAHAN
FOR THE COURT

CARR, P. J.
SUTTON, J.
CONCUR.

APPEARANCES:

THOMAS C. LOEPP, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.

RANDALL C. BRAY, Attorney at Law, for Appellee.

NOWAR KATIRJI, Attorney at Law, for the Children.

NEIL P. AGARWAL, Guardian ad Litem.