[Cite as *In re S.V.*, 2023-Ohio-1805.]

STATE OF OHIO )
)ss:
COUNTY OF SUMMIT )

IN THE COURT OF APPEALS
NINTH JUDICIAL DISTRICT

IN RE: S.V.
M.V.
Z.V.

C.A. Nos.   30368
30369
30370

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.   DN 21-11-0953
DN 21-11-0954
DN 21-11-0955

DECISION AND JOURNAL ENTRY

Dated: May 31, 2023

SUTTON, Presiding Judge.

{¶1}   Appellant, P.K. ("Mother"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that placed her three minor children in the legal custody of their father, D.V. ("Father").  This Court affirms.

I.

{¶2}   Mother and Father have never been married but they have three children together: S.V., born July 31, 2008; M.V., born June 5, 2007; and Z.V., born November 23, 2005.  The legal custody of these children is the subject of this appeal.

{¶3}   The three children began living with Father pursuant to an agreement between the parties in 2014.  Father formally sought custody in domestic relations court in December 2015, because Mother lacked appropriate housing, had exposed the children to inappropriate adults, and

the children's academic school performance had significantly declined. After being temporarily placed in Father's home, the domestic relations court heard evidence that the children had adjusted well, Father was consistently meeting their needs, and their school performance had greatly improved. Consequently, on November 4, 2016, that court named Father the sole custodial parent, and granted Mother parenting time with them under the standard parenting time order.

{¶4} This juvenile case began after Mother contacted Summit County Children Services Board ("CSB") about an incident that occurred at Father's home after the children had returned from a visit with her. Prior to the visit with Mother, Father had paid for the oldest child, Z.V., to have her hair professionally braided as a birthday gift before her sixteenth birthday.

{¶5} The children went to Mother's home for a weekend visit shortly afterward. Because of their recent poor grades in school, Father had taken away their cellphones as a punishment. Unbeknownst to Father, however, one of the children had taken a cell phone with him to Mother's home. While the children were visiting Mother that weekend, Mother took Z.V. to have hair extensions sewn into her hair and long acrylic nails glued on her fingernails. Mother did so without Father's consent and in violation of rules he expressed to the children and shared with Mother.

{¶6} When the children returned to Father's home, he was angry because Z.V. and Mother had violated his expressed rule against sewn-in hair extensions and long acrylic nails that he did not believe were appropriate for Z.V.'s age. Father insisted that the nails and hair extensions be immediately removed. Father assisted Z.V. in removing the hair extensions and nails, Z.V. became upset and began screaming, and Father yelled and swore during the incident. The evidence in the record would later reveal that Z.V. was upset about losing her new nails and hair extensions, and that the removal of the acrylic nails and hair extensions also would have caused her some level of discomfort.

{¶7} One of the other children used a cell phone to record audio of the incident between Z.V. and Father and sent the recording to Mother. Father later disciplined the children for violating his rules, including using a phone that had been taken away to record the incident and sending it to Mother. His discipline involved making Z.V. stand in the corner and requiring the other children to write statements about not violating Father's rules.

{¶8} Mother contacted the police, claiming that Father had used excessive discipline on Z.V. when he punished her, including forcefully removing the hair extensions and nails. The police went to Father's home to check on the children. Father explained to the police that the children were in his custody and that he had disciplined them for deliberately violating his rules. The police determined that the children were unharmed, so they left them in Father's home.

{¶9} Two days later, Mother contacted CSB about the incident of alleged excessive discipline at Father's home. CSB went to the home and spoke to Father. The children were at school at that time and Father did not agree to allow CSB to interview them. On December 6, 2021, CSB filed a complaint to commence this case. It also sought, and obtained, an order of access so it could interview the children without Father being present. After interviewing the children at school, CSB amended its complaint to add additional allegations about the incident at Father's home. In its amended complaint, CSB sought placement of the children in Mother's custody, under an order of protective supervision.

{¶10} As the details underlying this case unfolded, the juvenile court learned that Mother had been unsuccessfully trying to regain custody of these children in the domestic relations court for the past several years. Since Father received custody of the children in 2016, Mother had filed four unsuccessful motions in that court to modify parental rights and responsibilities. On October 22, 2021, when denying her most recent motion, the domestic relations court issued an order to

caution Mother that "further frivolous filings regarding emergency custody and/or reallocation of parental rights will result in a finding of sanctions." Mother did not seek appellate review of any of the domestic relations court orders.

{¶11} After the shelter care hearing, based on the recommendation of the guardian ad litem, the children were placed in the emergency temporary custody of CSB. In the shelter care order, the magistrate expressed concern that CSB had not fully investigated whether the children were afraid of Father and whether he had, in fact, used excessive force or discipline on Z.V., nor had it considered the possibility that Mother had coached the children in an attempt to undermine Father's role as the children's custodian. The magistrate referred to evidence about the parents' extensive history in domestic relations court, which was apparently unknown to CSB before that time.

{¶12} The matter proceeded to a two-day adjudicatory hearing before a visiting judge. At the conclusion of the hearing, the trial judge invited the parties to submit proposed findings of fact and conclusions of law pertaining to the adjudication of the children. CSB submitted proposed findings and conclusions, as did Father.

{¶13} CSB's proposed findings of fact focused on the children's testimony that Father had forcefully removed Z.V.'s hair extensions and acrylic nails; physically disciplined her; yelled and swore at her; and caused her to cry and scream. CSB's proposed conclusions of law were that, based on the excessive discipline of Z.V., she was an abused child under R.C. 2151.031(D). Based on an adjudication of abuse of Z.V., the agency concluded that Z.V. and the other children were therefore dependent children under R.C. 2151.04(C).

{¶14} Father's proposed findings of fact and conclusions of law focused on entirely different evidence presented at the hearing. His proposed findings of fact included that Father had

appropriately disciplined Z.V. and the other children for violating his rules; Z.V. had screamed during the incident because she was upset about having to remove her new hairstyle and fingernails; the children's testimony lacked credibility because they had changed their accounts of the incident between the time that CSB interviewed them and they testified at the adjudicatory hearing; the police found no problems at Father's home; the children all went to school the next day; and Mother had been attempting to undermine Father's authority as the children's custodian for several years. Father's proposed legal conclusions were that the allegations of abuse and dependency had not been proven and the complaint should be dismissed.

{¶15} Shortly afterward, the trial court issued its own judgment entry, dismissing the allegations of abuse, but adjudicating the children dependent under R.C. 2151.04(C) because their condition or environment warranted the state in assuming their guardianship. Notably, the trial court did not focus on allegations that Father had inappropriately disciplined Z.V. or the other children, except that he had "scream[ed] inappropriate obscenities" at Z.V.

{¶16} Most of the trial court's findings of fact emphasized that Mother had improperly influenced, pressured and/or coached the children to make false allegations about Father in her ongoing attempt to regain custody of the children. The trial court referred to Mother's history of frivolous attempts to regain custody of the children until the domestic relations court warned her that further frivolous motions would results in sanctions and that, less than one month later, the allegations against Father in this juvenile case began. The trial court explicitly found that Mother's conduct in taking Z.V. to get hair extensions and acrylic nails, without Father's permission or consent and replacing the braids that Father had already bought for her birthday, merely "created more drama and damage" in the already strained relationship between Mother and Father regarding their children. The trial court explicitly found that Mother had coached the children, as their stories

had changed after spending a lot of time with Mother and minimal time with Father, and Mother had admittedly sent text messages to Z.V. while she was testifying at the hearing.

{¶17} The initial dispositional hearing was held before the same judge, who considered the competing motions for legal custody to Mother or Father. CSB prosecuted the motion for the children to be placed in Mother's legal custody, but Mother did not testify or present any evidence on her own behalf. Moreover, the caseworker conceded at the hearing that she had not reviewed the records from the parents' extensive history in domestic relations court, which had been admitted into evidence at the adjudicatory hearing. Notably, she testified she was not aware that the domestic relations court had threatened to sanction Mother if she filed further frivolous motions to regain custody of the children or that it was a few weeks later that the allegations arose to institute this juvenile case. Moreover, the caseworker was unable to answer most questions about the circumstances and school performance of the children before this case began, in order to contrast it with the problems that the children had in school during the few months that this case was pending.

{¶18} On the other hand, Father gave undisputed testimony at the hearing that he had provided a suitable home for the children for more than five years before this case began, despite repeated attempts by Mother to undermine his authority and regain custody in domestic relations court. Following the hearing, the trial court awarded legal custody to Father, granted Mother visitation time under the court's standard order, and closed the case.

{¶19} Mother appeals and raises three assignments of error. Although CSB instituted this dependency case and filed a motion to place the children in Mother's legal custody, CSB did not file a brief in this appeal.

II.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED WHEN IT GRANTED LEGAL CUSTODY OF THE MINOR CHILDREN TO FATHER AND DENIED MOTHER'S MOTION FOR LEGAL CUSTODY AS THE TRIAL COURT'S DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND NOT IN THE MINOR CHILDREN'S BEST [INTEREST].

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY FAILING TO CONSIDER THE BEST INTERESTS OF THE CHILDREN AND BY GROSSLY MISREPRESENTING THE FACTS IN ITS DECISION.

{¶20} This Court will address the first two assignments of error together because they are interrelated. Mother challenges the trial court's dispositional decision to return S.V., M.V., and Z.V. to the legal custody of Father. Throughout her brief, Mother focuses on the testimony of her children and other witnesses that was presented at the adjudicatory hearing about Father allegedly abusing Z.V. by using excessive discipline on her. In its adjudicatory decision, however, the trial court dismissed the allegations that Z.V. was an abused child because the allegations had not been proven. In doing so, the court explicitly questioned the credibility of the children as witnesses by pointing to gaps and inconsistencies in their testimony and by finding that Mother improperly influenced them before and during their testimony.

{¶21} Although Mother now seems to question some of the court's findings upon adjudication, this Court must emphasize that Mother has not assigned error to the trial court's adjudicatory decision in this appeal. Her assignments of error are explicitly limited to the trial court's dispositional decision to return her children to Father's custody. The purpose of the hearing on the competing legal custody motions was not to relitigate the alleged circumstances underlying adjudication. *See In re A.D.*, 9th Dist. Summit No. 29976, 2022-Ohio-777, ¶ 15. Although Mother

suggests that the trial court erred by referring to the adjudicatory decision, she has failed to argue or demonstrate that the trial court erred by relying on its unchallenged factual findings and legal conclusions that are part of the record in this case.

{¶22} Mother also bases part of her argument on the extent to which she and Father complied with the requirements of the case plan filed by CSB. There was no court-ordered case plan in this case, however. Although CSB had filed a case plan prior to the adjudicatory hearing, the trial court did not adopt the case plan at that time, as the case plan is not adopted, if at all, until after the dispositional hearing. *See* R.C. 2151.412(E) ("The court, based upon the evidence presented at the dispositional hearing and the best interest of the child, shall determine the contents of the case plan and journalize it as part of the dispositional order for the child.").

{¶23} Prior to taking evidence at the dispositional hearing, the trial court did order each parent to obtain a parenting assessment, but they were not bound by any other terms of the case plan filed by CSB, as it had not been adopted by the trial court. *See* R.C. 2151.412(E) and (F)(1). At the dispositional hearing, however, there was little evidence before the trial court to demonstrate that a qualified professional had determined that either parent was or was not in need of parenting services to improve their ability to care for these children. Moreover, evidence about the parents' compliance with court-ordered parenting assessments was not dispositive of the children's best interests. *See In re T.H.*, 9th Dist. Summit No. 28833, 2018-Ohio-1143, ¶ 12 (applying the same reasoning to court-ordered case plans).

{¶24} The trial court was required to focus its legal custody decision on the specific statutory factors for determining the best interest of the child. "Following an adjudication of neglect, dependency, or abuse, the juvenile court's determination of whether to place a child in the legal custody of a parent or a relative is based solely on the best interest of the child." *In re K.H.*,

9th Dist. Summit No. 27952, 2016-Ohio-1330, ¶ 12. No specific test or set of criteria is set forth by statute regarding an award of legal custody, but Ohio courts agree that the juvenile court must base its decision to award legal custody on the best interest of the child. *In re B.B.*, 9th Dist. Lorain No. 15CA010880, 2016-Ohio-7994, ¶ 18, quoting *In re N.P.*, 9th Dist. Summit No. 21707, 2004-Ohio-110, ¶ 23.

**{¶25}** "[T]he primary focus at the legal custody hearing was on the current parenting ability of each potential custodian and whether it was in the best interest of the children to be permanently placed in the legal custody of [either] of them." *In re K.C.*, 9th Dist. Summit Nos. 26992 and 26993, 2014-Ohio-372, ¶ 20. The juvenile court is guided by the best interest factors enumerated in R.C. 2151.414(D) relating to permanent custody. *In re B.G.*, 9th Dist. Summit No. 24187, 2008-Ohio-5003, ¶ 9, citing *In re T.A.*, 9th Dist. Summit No. 22954, 2006-Ohio-4468, ¶ 17. Those factors include the interaction and interrelationships of the child, the child's wishes, the custodial history of the child, and the child's need for permanence. R.C. 2151.414(D)(1)(a)-(e)[1]; *see also In re B.C.*, 9th Dist. Summit Nos. 26976 and 26977, 2014-Ohio-2748, ¶ 16.

**{¶26}** The juvenile court may also consider the best interest factors in R.C. 3109.04(F)(1). *In re K.A.*, 9th Dist. Lorain Nos. 15CA010850 and 15CA010860, 2017-Ohio-1, ¶ 17. While many factors overlap with those set forth in R.C. 2151.414(D)(1), separate factors that are relevant in this case are the children's adjustment to their "home, school, and community;" and the proposed custodian's likelihood to honor and facilitate visitation or parenting time. R.C. 3109.04(F)(1)(d),(f).

---

[1] R.C. 2151.414(D)(1)(e) also requires the trial court to consider whether any of the factors set forth in R.C. 2151.414(E)(7)-(11) apply to this case, but none of those factors are relevant here.

{¶27} An award of legal custody must be supported by a preponderance of the evidence. *In re M.F.*, 9th Dist. Lorain No. 15CA010823, 2016-Ohio-2685, ¶ 7. "Preponderance of the evidence entails the greater weight of the evidence, evidence that is more probable, persuasive, and possesses greater probative value." (Internal quotations omitted.) *Id.* In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal citations and quotations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21.

{¶28} There was little evidence presented about interaction between the parents and the children during the four months that this case was pending. Each parent started with supervised visitation. As the case progressed, for reasons not clear from the record, Mother's visitation was expanded to unsupervised visits in her home, but Father's was not. Prior to this case, the children had lived in Father's sole custody for several years and had visits with Mother pursuant to a standard parenting time order.

{¶29} The wishes of the of the children were presented through the guardian ad litem. It was not disputed that each child had expressed a desire to return to Mother's custody. Although the guardian ad litem supported the children's wishes and recommended legal custody to Mother, he further testified that Father was also prepared and could provide the children with a legally secure permanent placement.

**{¶30}** As far as the children's expressed wishes are concerned, the trial court had already questioned the credibility of their statements. The court concluded in its adjudicatory decision that Mother had been attempting for years to undermine Father's authority over the children and that she had improperly influenced the children to testify that Father had inappropriately disciplined them. Mother did not challenge any prior findings to that effect in the domestic relations or juvenile courts.

**{¶31}** The children's custodial history, for the seven years preceding this case, had been spent living in the physical and then legal custody of Father and Father had demonstrated his ability to provide the children with a suitable home. Although Mother repeatedly attempted to regain custody of the children through proceedings in domestic relations court, that court maintained the children in Father's custody. CSB and the guardian ad litem believed that Mother could provide the children with a suitable home, because she was more stable than she was several years ago when the children were placed with Father. Mother had not demonstrated an ability to meet the children's daily needs, however, because she had not had custody of them for over seven years.

**{¶32}** Neither CSB nor Mother offered any evidence to dispute evidence that Father had provided the children with a suitable home for more than seven years and that he could do so in the future. While living in Father's custody, the children had attended school regularly, performed well academically, and never had any disciplinary problems.

**{¶33}** After the children were removed from Father's custody during this case, each of them had been suspended or gotten into other disciplinary trouble at school, which Father testified had never happened before. Father also testified about Z.V.'s developmental delays, her tendency to throw tantrums, and the I.E.P. she has at school. No other witnesses knew why the child had an I.E.P. or that she had any specific academic needs or behavioral issues. Father stated that he was

actively involved in his children's schooling and that he had been a strict disciplinarian in order to keep the children focused on academics and out of trouble at school.

{¶34} During this case, the children had expressed some concern because they were uncertain about where they were going to live. They needed a legally secure permanent placement and the trial court concluded that Father could provide them with a secure permanent placement, given his extended history of doing so.

{¶35} The trial court also considered the children's adjustment to home, school, and community. R.C. 3109.04(F)(1)(d). Before this four-month case began, the children had been living with Father for several years and had adjusted to their current schools. If the children were to be placed with Mother, they would have to adjust to new schools, as she lived in a different school district and planned to send the children to those schools after the end of the current school year.

{¶36} Finally, the trial court considered which parent would be more likely to honor and facilitate the other parent's right to parenting time with the children. *See* R.C. 3109.04(F)(1)(f). Throughout the seven years that the children had been living with Father, no one disputed that he had facilitated Mother's parenting time with them. Given Father's history of facilitating Mother's parenting time and Mother's history of attempting to undermine Father's role as the children's custodian, the trial court concluded that Father would be the parent more likely to facilitate an ongoing relationship between the children and the non-custodial parent.

{¶37} Moreover, as a party seeking legal custody of S.V., M.V., and Z.V., Mother had her own burden of proving by a preponderance of the evidence that placement of the children in her legal custody was in their best interest. *In re A.W.*, 9th Dist. Lorain No. 20CA011671, 2021-Ohio-2975, ¶ 17, citing *In re T.R.*, 9th Dist. Summit Nos. 25179 and 25213, 2010-Ohio-2431, ¶

27. Although CSB supported Mother's motion for legal custody, the testimony of the caseworker demonstrated that the agency was unaware of many facts critical to the case. Mother presented no evidence to support granting legal custody to her and did not testify at the hearing. Mother has failed to demonstrate that the trial court lost its way in concluding that legal custody to Father was in the best interest of S.V., M.V., and Z.V. *See Eastley* at ¶ 20. Mother's first and second assignments of error are overruled.

## ASSIGNMENT OF ERROR III

> THE TRIAL COURT ABUSED ITS DISCRETION AND CREATED REVERSIBLE ERROR WHEN IT OVERRULED THE MOTION TO STRIKE FATHER'S PROPOSED FINDING OF FACTS AND CONCLUSIONS OF LAW.

**{¶38}** Mother's final assignment of error is that the trial court committed reversible error by allowing Father to file his proposed findings of fact one day late. At the conclusion of the hearing, the trial judge granted the parties the opportunity to file proposed findings of fact and conclusions of law within seven days, by May 2, 2022. CSB did not file proposed findings; Mother timely filed hers on May 2; and Father filed his proposed findings and conclusions one day later, on May 3, 2022. Mother moved to strike Father's untimely filing, but the trial court denied Mother's motion and granted Father leave to file on May 3, 2022. On June 10, 2022, the trial court filed its own dispositional judgment, which included many findings of fact that were not proposed by the parties and did not incorporate many of Father's proposed factual findings or legal conclusions.

**{¶39}** Pursuant to Civ.R. 52, the trial court had the discretion to permit one or both parties to submit proposed findings of fact and conclusions of law. Moreover, those proposed findings and conclusions of law served "only as an aid and did not relieve the trial court of its ultimate responsibility to ensure that its findings and conclusions were factually and legally accurate." *In*

*re U.G.*, 9th Dist. Summit No. 30193, 2022-Ohio-3905, ¶ 24, quoting *Valley City Elec. Co., Inc. v. RFC Contracting, Inc.*, 9th Dist. Lorain No. 09CA009608, 2010-Ohio-964, ¶ 9.

{¶40} Mother has failed to argue or demonstrate that the trial court committed error, much less reversible error, by allowing Father to file his proposed findings of fact and conclusions of law one day after the May 2 deadline. Significantly, she has failed to demonstrate that she suffered any prejudice, as she had the opportunity to submit her own proposed findings and conclusions, the trial court did not issue its final judgment for another month, and its judgment did not include many of the factual findings and legal conclusions that Father had proposed. Mother's third assignment of error is overruled.

III.

{¶41} Mother's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to

mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

---

BETTY SUTTON
FOR THE COURT

CARR, J.
STEVENSON, J.
CONCUR.

APPEARANCES:

JASON D. WALLACE, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and JACQUENETTE S. CORGAN, Assistant Prosecuting Attorney, for Appellee.

AVIVA L. WILCHER, Attorney at Law, for Appellee.

BENJAMIN AYERS, Guardian ad Litem.